UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA KINCAID, DOUG DEATHERAGE, CHARLENE CLAY, CYNTHIA GREENE, JOANNA GARCIA, AND RANDY JOHNSON, INDIVIDUALLY ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>  v.<br><br>CITY OF FRESNO, CALIFORNIA DEPARTMENT OF TRANSPORTATION, ALAN AUTRY, JERRY DYER, GREG GARNER, REYNAUD WALLACE, JOHN ROGERS, PHILLIP WEATHERS AND WILL KEMPTON, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES; DOES 1-100, INCLUSIVE,<br><br>        Defendants. | 1:06-cv-1445 OWW<br><br>STATEMENT OF DECISION AND FINDINGS RE: PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER |

Plaintiffs' application for Temporary Restraining Order came on for hearing on shortened time on October 19, 2006, in Courtroom 3 of the above-captioned Court, the Honorable Oliver W. Wanger presiding.  Plaintiffs were represented by Heller Ehrman LLP by Paul Alexander, Esq.; Lawyers' Committee for Civil Rights by Oren Sellstrom, Esq.; and ACLU Foundation of Northern California by Michael T. Risher, Esq.

1

Defendant City of Fresno was represented by Betts & Wright by James B. Betts, Esq., and James C. Sanchez, Esq., City Attorney for the City of Fresno.  The matter was submitted on Plaintiffs' Motion, supporting and opposing Points and Authorities, accompanying Declarations under Penalty of Perjury for both sides as well as the oral arguments of counsel.  After considering all submissions in support of and opposition to the motion and the arguments of counsel, the Court enters the following Statement of Decision.

## BACKGROUND

Between 4,400 to 8,800 of the City of Fresno's approximately 440,000 residents are homeless.  Plaintiffs' exhibit A, pp. 10-11.  Services for low income people in need of shelter are extremely scarce.  "[O]nly 1.4% of the homeless population [is] sheltered . . . leaving more than 98% of the homeless population unsheltered and receiving no services.  *Id.* at 13.  Individuals without residences have set up temporary shelters in the southwestern area of the City of Fresno on property they do not own and do not maintain.  The City asserts such temporary shelters and congregations of individuals create a risk to the public health and safety and generate significant complaints from surrounding residents, business and property owners.

The City of Fresno's response to the numerous complaints has been to provide "advance oral and sometimes written notice," ranging from one to five days, to the homeless in the area, that the residents of the temporary shelters must move, and that any unclaimed property will be discarded.  The exact timing, form,

and adequacy of the notice given is a materially contested fact, particularly as to personal property of the homeless persons that will be discarded or destroyed.

When the City removes a temporary settlement, a bulldozer, City garbage truck, or other heavy equipment are employed to pick up most of the Plaintiffs' possessions and dump them in a garbage truck where the property is immediately crushed by compaction.

There have been approximately six of these sweeps in which residents of temporary shelters were required to move with their property and all their property that has not been carried away by the individual owners, is loaded into garbage trucks and destroyed on the spot.

Further dispute exists to when and to what extent Plaintiffs are permitted to retrieve their possessions or save them from destruction before and during the sweeps. Plaintiffs claim that efforts to save their possessions have resulted in arrest threats. The Fresno Police who execute the sweeps have announced to individuals present that once the heavy equipment and garbage trucks arrive, no one, including the owners, may interfere with the seizure and destruction of the property due to safety concerns.

The following events form the basis for the complaint:

1. May 3, 2006. Defendants confiscated and destroyed the property of homeless persons living on the west side of "E" Street, Broadway Street, and H Street, Van Ness Street and Los Angeles Street, and Santa Fe Street and Ventura Street in Fresno, California.

2. May 25, 2006. Defendants confiscated and destroyed the

3

property of homeless persons living on the west side at "E" Street in Fresno, California.

3.  June 22, 2006.  Defendants confiscated and destroyed the possessions of the homeless on both sides of "E" Street and Santa Clara Street in Fresno, California.

4.  July 1, 2006.  Defendants confiscated and destroyed the property of homeless persons living on the west side of "E" Street in Fresno, California.

5.  August 26, 2006.  Defendants confiscated and destroyed the property of homeless persons living on both sides of "E" Street in Fresno, California.

6.  October 8, 2006.  Fresno Police Officers came to an area near "H" and San Benito Streets where several homeless people were found.  Some of these homeless people had shopping carts that they claimed were their own property they used to move personal property.  Police dumped the possessions onto the ground, confiscated all the shopping carts and removed them.

7.  October 11, 2006.  Fresno Police Officers confronted a group of homeless people in the area of "H" and San Benito Streets, ordered them to stand in lines for a period of time, and gave the people a "formal warning" that the police intended to return "very soon" (the police did not say when) to destroy everything homeless people owned in the area.

The evidentiary submissions establish:

1.  Defendants have conducted sweeps under color of law to remove the temporary settlements and homeless persons from areas in the southwestern area of the City of Fresno.

2.  During the sweeps, Defendants confiscate and destroy

4

all personal property of the Plaintiffs and others as it is found.

3. As a result of such destruction of property, Plaintiffs and others have lost possessions that they own, including any shelter, clothing, medication, identification documents and important papers, radios, and other items of irreplaceable personal value such as photographs of loved ones, a lock of child's hair, and an urn containing the ashes of a close family member.

4. The Notice and procedures utilized by the City of Fresno and its Police Department have been inadequate to permit Plaintiffs and others to recover and preserve their personal property. No post-deprivation procedure was available to recover such property.

5. Defendants have no apparent plan and make no effort to retain or preserve any of the homeless persons' property found during sweeps, which is immediately confiscated and destroyed.

6. During the sweeps and seizure and destruction of personal property, Plaintiffs and others are not permitted to retrieve personal possessions, once the heavy equipment has arrived due to alleged safety concerns.

7. Plaintiffs are not cited for violation of any ordinance or law of the City of Fresno or State of California in connection with their presence or the destruction of their personal property.

8. The sweeps are intended to "clean up" the area by removing homeless persons and their personal property, in part to respond to citizen and business complaints and to address reports

of and observed criminal activity.

## II.  PLAINTIFFS' CLAIMS

Plaintiffs claims include: violation of their rights under the United States Constitution Fourth Amendment to be free from unreasonable seizures and searches; the Fifth and Fourteenth Amendments for deprivation and destruction of personal property without due process of law without meaningful notice and the opportunity to be heard at a meaningful time in a meaningful manner; violation of the California Constitution Art. I, §§ 7 and 13, prohibiting unlawful searches and seizures of property and deprivation and destruction without due processes of law; violation of California Civil Code § 2080 et seq., protecting the rights of owners of "found" property; and violation of California Civil Code § 52.1 et seq., for alleged interference with rights secured by the Constitution or laws of the United States or rights secured by the Constitution and laws of the State of California from infringement by threats, intimidation, or coercion.

## III.  DEFENDANTS' DEFENSES

The Defendants assert that they do not have any policy or practice in place or that has been implemented to seek out or eliminate shelters of homeless individuals and cannot be liable under *Monell* for abridgement of federal civil rights under color of state law.  When temporary shelters and homeless persons trespass on the private property of others or provide the situs for criminal activity, or lead to complaints from local

6

residents, citizens, business and property owners, the Fresno Police Department responds to such calls for service.

The temporary shelters are sites of substance abuse, prostitution, assault, and child endangerment. Public accommodations for sewage and refuse at the sites are nonexistent and the temporary shelter areas present a threat to public health and safety.

The City alleges that it does not conduct unannounced sweeps or raids of such sites. Rather, each and every enforcement action is preceded by the organized distribution of oral and written notice to the inhabitants of temporary shelters that a clean-up of the area will be conducted and that all trash, including unattended property found without the owner to claim it, will be removed. These notices are given at least 24 hours in advance and are both oral and written. Frequently, notices are given three to five days in advance of the need to relocate and move personal property.

The City claims it only refuses to honor requests to remove personal effects from temporary shelter areas once heavy equipment, which poses an unreasonable risk of harm, has moved into a sweep area.

As to shopping carts which accumulate around the homeless shelter areas, the City has adopted a shopping cart ordinance, under which it collects branded shopping carts and turns them over to a private contractor for return to private business or sale. Plaintiffs maintain they and others at the site own unbranded shopping carts.

Defendants object that the City has not been properly

7

served, however, Court-required notice of the hearing on application for temporary restraining order was provided to counsel for the City, in accordance with the Court's directions and the City filed a substantial opposition, including a Memorandum of Points and Authorities, numerous opposing Declarations, and presented vigorous and informed oral argument in opposition to the request for Temporary Injunctive Relief.

## IV.   THE LAW

Injunctive relief is an equitable remedy that considers the likelihood of success on the merits and the nature of harm caused by challenged conduct. *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Under the traditional test, a plaintiff must show the following for injunctive relief:

   1.   A strong likelihood of success on the merits;
   2.   The possibility of irreparable harm to the Plaintiff if injunctive relief is not granted;
   3.   A balance of hardships favoring the public; and
   4.   Advancement of the public interest in certain cases.

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). In the alternative, a court may grant injunctive relief if Plaintiff "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." 408 F.3d 1120. The standard for granting a temporary restraining order is the same as for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v.*

*John D. Brush & Co.*, 240 F.3d 382, 389, n.7 (9th Cir. 2001).

A mandatory injunction, one that compels action, (rather than a prohibitory injunction, which forbids action) goes beyond simply maintaining the status quo and is disfavored. *LGS Architects, Inc. v. Condordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). The purpose of a temporary restraining order is to maintain the relative positions of the parties until a trial on the merits is held.

Due to the threat on October 10, 2006, of a new sweep, the need for relief is urgent and immediate. Here, the Court will not grant mandatory injunctive relief. It is the City, not the Court, that must establish policy, allocate resources, enforce the law and determine how to address the problem of its homeless population. The Court has no legislative function and is only authorized to protect the legal rights of the parties, not to enforce or execute the laws, which must be left to the City and its Police Department. Equity also abhors the Court's need for supervision of an injunction, a further reason for injunctive relief to be specific, prohibitory, and self-executing.

A.  <u>PROBABILITY OF SUCCESS ON THE MERITS</u>

The Fourth Amendment to the United States Constitution protects against unreasonable seizures and searches. *Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005). A seizure occurs when there is some meaningful interference with an individual's possessory interests in property. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 63 (1992). A seizure becomes unlawful when it is "more intrusive than necessary." *San Jose Charter of*

9

*the Hell's Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). An officer who comes across an individual's property in a public area may seize it only if Fourth Amendment standards are satisfied - for example, if the items are evidence of a crime or contraband. *Soldal*, 506 U.S. at 68; *San Jose Chapter of the Hell's Angels*, 402 F.3d at 975 ("[t]he destruction of property by State officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them.").

B.  SEIZURE OF THE PROPERTY OF THE HOMELESS

*Pottinger v. City of Miami*, 810 F.Supp. 1551, 1556 (S.D. Fla. 1992) cited with approval in *U.S. v. Gooch*, 6 F.3d 673, 677 (9th Cir. 1993), found Fourth Amendment and Due Process violations where City of Miami employees routinely seized and destroyed the possessions of the homeless in addressing its "homeless problem," where such property included personal identification, medicine, clothing, and a Bible, by use of front-end loaders and dump trucks to destroy the property of the homeless, and threatened with arrest those who attempted to retrieve belongings. Although the City has an interest in keeping areas sanitary, orderly, and law-abiding, such interests did not outweigh or justify violations of fundamental constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. The Court observed that the value of personal property of the homeless "is in the eye of the beholder, as one man's junk is another man's treasure." *Id.* at 1556. Injunctive relief was issued against

the City of Miami.

In *Justin v. City of Los Angeles*, CV012352 LGB AIJX, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000), the Plaintiffs who were homeless individuals, charged the Los Angeles Police Department and other City officials with unlawful searches and seizures, including the destruction of the homeless persons' personal property.  In rejecting the City's argument that it had the right to keep its streets safe and clean, the *Justin* court held:

> Here, Defendants may be slowed in their efforts to keep the City, and especially the downtown area, clean and safe.  This injunction may disturb their new initiative to revitalize and uplift communities, to improve the streets and sidewalks, and to diminish the crime rate.  Plaintiffs, however, risk a greater harm if the injunction is not granted.  The violation of their First, Fourth, and Fourteenth Amendment rights.  *Id.* at *11.

In this case, the balance of hardships of the Plaintiffs' interest in protecting against immediate, irrevocable destruction of their personal property, some of which is so unique and of such sentimental value as not to be replaceable by money, against the City's need to destroy that property as part of its law enforcement efforts, weighs heavily in favor of Plaintiffs.  The City can enforce the laws, remove the homeless from private property or other areas where they unlawfully congregate, and otherwise enforce public health and safety laws, including criminal laws necessary to protect the public, if there is probable cause to believe such laws are violated.  The immediate and permanent destruction of personal property without a method to reclaim or to assert the owner's right, title and interest to recover such personal property, in a pre- or post-seizure hearing, without any showing that there is no feasible

11

alternative; and without probable cause for seizure and immediate destruction of such property, violates the Fourth, Fifth and Fourteenth Amendments to the United States Constitution in Art. I, §§ 13 and 7(A) of the California Constitution.

The public interest is served in the interim by issuance of injunctive relief to maintain the status quo, by requiring the City to take custody of and maintain homeless persons' property it seizes, pending a full evidentiary hearing in this matter. If the City needs to conduct sweeps or take other law enforcement action against homeless individuals in the interim period, the City will suffer negligible hardship in having to store property seized, as opposed to the irrevocable destruction of the Constitutional rights and property of affected homeless individuals.

Absent further evidentiary showing, the City has not established that its seizures and destruction of the property here complained of are lawful and not more intrusive than necessary. *San Jose Chapter of the Hell's Angels Motorcycle Club*, 402 F.3d at 975. Temporary injunctive relief will in no way hinder the City's necessary law enforcement efforts in addressing any violations of City ordinances, local, or State law by the homeless. Even actual violations of ordinances, local, or State laws, do not per se, justify the immediate wholesale destruction of Plaintiffs' personal property, which is not contraband.

C.   DUE PROCESS VIOLATIONS

Before the government seizes an individuals' property, even

12

1  temporarily, it must provide notice and an opportunity to be
2  heard prior to the seizure, except in "extraordinary situations
3  where some valid governmental interest is at stake, that
4  justifies the postponing of the hearing until after the event."
5  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53
6  (1993).  Pre-seizure notice is not dependent upon the value of
7  the property.  *Fuentes v. Shevin*, 407 U.S. 67, 84-87 (1972);
8  *Property v. District of Columbia*, 948 F.2d 1327, 1334 (D.C. Cir.
9  1991) (government must provide adequate notice to owners of
10 parked cars before it tows them as "junk.").
11    The notice must be meaningful.  Where personal property
12 destroyed includes the necessities of life, identification
13 documents, shelter, medicine and clothing, and personal effects
14 of unique and sentimental value, a means to provide an
15 opportunity to be heard either before or after the seizure of the
16 property is an irreduceable right that is being violated.  *Logan
17 v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982); *see also, Wong
18 v. City & County of Honolulu*, 333 F.Supp.2d 942, 945 (D. Hawaii
19 2004); *Schneider v. County of San Diego*, 28 F.3d 89, 93 (9th Cir.
20 1994) (notice insufficient).

## V.  CONCLUSION

23    The peremptory destruction of all personal property of
24 homeless persons during law enforcement sweeps to remove homeless
25 persons' temporary shelters and homeless persons from areas in
26 the southwest City of Fresno in the manner proved, violates the
27 Fourth, Fifth and Fourteenth Amendments of the United States
28 Constitution, California Constitution, Article 1, Section 13

(unlawful searches and seizures), and California Constitution, Article 1, Section 7(A) (due process).

A.   **RELIEF**

Pending development of a full evidentiary record at a hearing on motion for preliminary injunction, the City of Fresno, and its Police Department, and all those acting for, under and/or in concert with them or who have actual notice of this order, are temporarily restrained and enjoined from immediately destroying the property of homeless persons during protective sweeps, activities to remove homeless persons from temporary shelter sites, or other activities to seize the personal property of homeless persons, without providing constitutionally adequate notice and meaningful opportunity to be heard concerning the seizure and destruction of such personal property.

B.   **DURATION OF ORDER**

This Order shall remain in effect through November 7, 2006, for good cause due to unavailability of counsel and need to prepare for a hearing on November 7, 2006, or further order of this Court. The Defendant City may, on two days notice, move for the dissolution or modification of this Temporary Restraining Order.

C.   **BOND**

Because the Plaintiffs are indigent, their attorneys are acting pro bono, and they are without financial or other resources which would permit them to post a bond, the requirement

of a monetary undertaking is waived.  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  There appears to be no realistic likelihood of compensable harm to Defendants during the term of this temporary restraining order.

D.   **HEARING ON PRELIMINARY INJUNCTION**

A hearing on Plaintiffs' Application for a Preliminary Injunction shall be held on November 7, 2006, at 9:00 a.m. in Courtroom 3 of the above-captioned court.

Dated: October 23, 2006 at 4:33 p.m.

                         /s/ OLIVER W. WANGER
                         United States District Judge