1
2
3
4
5
6

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13
14
15
16
17

| | |
|---|---|
| **PAMELA KINCAID, DOUG DEATHERAGE, CHARLENE CLAY, CYNTHIA GREENE, JOANNA GARCIA, RANDY JOHNSON, individually on behalf of themselves and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF FRESNO, CALIFORNIA DEPARTMENT OF TRANSPORTATION, ALAN AUTRY, JERRY DYER, GREG GARNER, REYNAUD WALLACE, JOHN ROGERS, PHILLIP WEATHERS, AND WILL KEMPTON, individually and in their official capacities; DOES 1-100, inclusive,**<br><br>**Defendants.** | **1:06-CV-01445 OWW SMS**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS** |

18
19

### 1.   INTRODUCTION

20      This matter comes before the court on Plaintiffs' motion to
21   certify a class pursuant to Fed. R. Civ. P. 23(a) and Fed. R.
22   Civ. P. 23(b).  Plaintiffs argue that there are sufficient common
23   questions of fact and law to warrant certification as a class
24   action membership.  Defendants oppose Plaintiffs' motion.

25                        ### 2.   PROCEDURAL BACKGROUND

26      Plaintiffs filed their initial complaint on October 17,
27   2006.  (Doc. 1, Complaint.)  Plaintiffs filed a second amended
28   complaint ("SAC") on March 1, 2007.  (Doc. 113, SAC.)  On June

**1**

15, 2007 Plaintiffs filed a motion to certify class.  (Doc. 131, Motion to Certify Class.)  On July 2, 2007 Defendants opposed the motion.  (Doc. 135, Opposition.)  On July 2, 2007 Defendant Will Kempton joined in opposing Plaintiffs' motion.  (Doc. 137, Joinder by Will Kempton, July 2, 2007.)  On July 11, 2007 Plaintiffs filed their reply.  (Doc. 143, Reply.)

### 3. FACTUAL BACKGROUND

The facts of this case are sufficiently described in other motions.  Only a brief summary of the facts is necessary.

This case concerns a number of clean-up operations (sweeps) conducted by Defendants.  For more than a year, Defendants implemented a policy of seizing and immediately destroying personal property of homeless individuals in an effort to clean up the City of Fresno.  (Doc. 113, SAC, ¶ 38.)  A number of these clean up efforts occurred on property belonging to Caltrans, including the raids on May 3, 2006, May 25, 2006, June 22, 2006, and August 26, 2006.

In bringing this action Plaintiffs seek a permanent injunction and declaration of illegality of Defendants' conduct.  Secondarily, Plaintiffs seek damages for the losses suffered from seizure and destruction of their property, much of which is common.  According to Plaintiffs, the overarching issue of Defendants' liability will involve elements of common proof.  The common issues include:

1.  whether Defendants' policies and practices in conducting the sweeps at issue are unlawful, in that they result in immediate destruction of property of the homeless;

2.  whether Defendants' policies and practices in conducting the

**2**

1  sweeps at issue are unlawful in that they fail to provide

2  adequate pre- or post-seizure notice and fail to provide any

3  opportunity to recover seized property;

4  3.   the nature of injunctive relief that should be ordered,

5  including notice requirements, the amount of time allowed to

6  move property, and what must be done with property that is

7  removed; and

8  4.   whether Defendants are liable for statutory and/or punitive

9  damages and if so, how much.  (Doc. 131, Motion to Certify

10  Class, Filed June 15, 2007.)

11  Plaintiffs now seek certification of class members.

12  ### 4.   LAW AND ANALYSIS

13  **A.   General Standard for Class Certification**

14  Class certification is governed by Federal Rule of Civil

15  Procedure 23.  "When a person sues or is sued as a representative

16  of a class, the court must...determine by order whether to

17  certify the action as a class action."  Fed. R. Civ. P. 23(a)(1).

18  To attain certification, a proposed class must satisfy four pre-

19  requisites set forth in Rule 23(a): (1) the class must be "so

20  numerous that joinder of all members is impracticable," (2) there

21  must be "questions of law or fact common to the class," (3) the

22  claims of the class representatives must be "typical of the

23  claims... of the class," and (4) class representatives must

24  "fairly and adequately protect the interests of the class."

25  If a proposed class satisfies all four prerequisites of rule

26  23(a), one of the three alternative requirements set forth in

27  Rule 23(b) must be satisfied as well.  Plaintiffs in this case

28  seek certification under Rule 23(b)(2) and Rule 23(b)(3).

**3**

Rule 23(b)(2) requires a finding:

> [T]hat the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief within respect to the class as a whole.

Rule 23(b)(3) requires a finding:

> [T]hat the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**B.    Rule 23(a) Analysis**

      **i.    Implied Threshold Requirements**

In addition to the four requirements set forth explicitly in Rule 23(a), courts often imply two additional, threshold requirements: (a) that a "defined identifiable class exists" and (b) "that the class representatives must be members of the class." *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 509 (D. N.M. 2004).  The proposed class satisfies these requirements. Plaintiffs define the proposed class to include,

> "All persons in the City of Fresno who were, are, or will be homeless at any time after October 17, 2003, whose personal belongings have been or may in the future be taken or destroyed by one or more Defendants.".

(Doc. 131, Motion for Class Certification, page 7.) All representative Plaintiffs are also members of the class in this case.  Named Plaintiffs are individuals who reside in the City of Fresno, were homeless, and allege a loss of property as a result of the City of Fresno's pattern and practice of seizing and

**4**

immediately destroying homeless peoples' property.  All
Plaintiffs claimed that they suffered harm during the relevant
period beginning on October 17, 2003.  Further, all class
representatives have submitted declarations detailing the alleged
harm they suffered.[1]

Defendants argue that Plaintiffs seek to certify a
substantially overbroad and undefined class.  It is unclear from
Defendants pleadings whether they also argue that Plaintiffs do
not meet the threshold requirement that "a defined identifiable
class exist" and that "the class representatives must be members
of the class."  Defendants argue that the term "homeless" used in
the definition of the class is ambiguous, making the designation
of the class overbroad.[2]  In support, Defendants point to

_____

[1] (*See,* Doc. 113, Second Amended Complaint "SAC", ¶¶ 49-57,
Filed February 22, 2007;  *See also,* Doc. 10, Kincaid Decl; Doc.
6, Deatherage Decl.; Doc. 5, Clay Decl.; Doc. 8, Greene Decl.;
Doc. 7, Garcia Decl.; Doc. 9, Johnson Decl.; Doc. 48, Nelson
Decl.; Doc. 13, Williams Decl., all Filed on November 6, 2006.)

[2] Defendants cite *Joyce v. City & County of San Francisco*,
846 F. Supp. 843, 851-852 (N.D. Cal. 1994) where the court
expressed concern of the vagueness of the term "homeless."
However, the concern was based on a definition used by the
parties in that case who sought to enjoin Defendants for
enforcing certain aspects of their "Matrix Program."  *Id.* at 845.
The court reasoned that the proposed definition of "homeless"
would require "individualized determination whether that person
possessed a 'fixed, regular, and adequate nighttime residence.'"
*Id.* at 851.  Determining this would make enforcement of the
proposed injunction impractical. *See, Id.* at 853.  The concern
over the ambiguousness of the proposed definition of "homeless"
in *Joyce* and its relation to the enforcement of a proposed
injunction is a different issue from the one presented here,
which is whether "a defined, identifiable class exists."

testimony given by Ms. Liza Apper at the hearing on the preliminary injunction.  Defendants argue that Ms. Apper's definition and the Housing and Urban Development's definition of homeless individuals includes: (1) individuals who live in the street; (2) episodic homeless; and (3) transitional homeless. Defendants further argue that the named Plaintiffs each fall within a small subset of homeless individuals and represent a mere ten percent (10%) of the homeless individuals in Fresno County.[3]

However, the definition of the class proposed by Plaintiffs does not depend on the definition of the term "homeless" nor does it seek to include all homeless people in Fresno.  Rather, the definition seeks to specifically define a class of homeless individuals in Fresno "whose personal belongings have been or may be in the future taken or destroyed by one or more of the defendants."  The proposed definition of the class also provides a time frame to narrow and identify group members who claim to have been harmed after October 17, 2003.

---

[3]  Defendants also argue that there are "far more individuals who are considered homeless because they are living with family and friends than there are homeless living in the street."  In support of their argument, Defendants cite to the Continuum of Care study which they argue reveals that only ten percent (10%) of homeless individuals in the Central Valley qualify as homeless.  Even if this is true, ten percent(10%) would still constitute a "defined identifiable class" of 800 out of the 8,000 homeless people in Fresno.  This is also sufficient to establish numerosity under the first element of Rule 23(a).

**6**

In balancing the concerns of both parties, including the different categories of homeless individuals in the City of Fresno, the definition of class members is hereby narrowed to include:

> "All persons in the City of Fresno who were or are
> homeless, without residence, after October 17, 2003,
> and whose personal belongings have been unlawfully
> taken and destroyed a sweep, raid, or clean up by any
> of the Defendants."

This definition establishes a defined identifiable class representative of its members who allegedly suffered harm by Defendants' sweeps in which the property of homeless individuals was seized and destroyed.

### ii.   Numerosity and Impracticability of Joinder

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Nevertheless, "Plaintiffs must show some evidence of or reasonably estimate the number of class members.  Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1)." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999).

In this case, Plaintiffs estimate that over 8,000 residents of Fresno are homeless. (*See*, SAC 8:2-14, citing "Fresno Madera

**7**

Continuum of Care Plan to End Homelessness" (CCP) at 10-11.)
Plaintiffs also estimate that at least 98% of this population is
unsheltered.  Further, Defendants' policy has been implemented in
at least 25 sweeps per year since 2004, totaling at least 50
separate sweeps.  (Doc. 91, Statement of Decision and Findings
Re: Pls.' Application for Prelim. Inj., 13:24-27).

Defendants argue that only 23 claims for damages have been
filed with the City by residents purportedly affected by the
City's conduct.  Based on this evidence, Defendants argue that
"there is a substantial question concerning the number of
homeless individuals who are living in the street who fall within
the scope of the Plaintiffs' class."  Defendants claim that
Plaintiffs provide no evidence to establish that the number of
homeless individuals who have lost their personal belongings is
so extensive that class treatment is required.

The findings issued on Plaintiffs' Application for
Preliminary Injunction, noted that although Specialist Reynaud
Wallace testified that he "did not keep count of all the carts
containing the property of the homeless that he has observed
being destroyed by the City pursuant to its policy, practice, and
pattern," he did estimate "that the number of such destroyed
carts containing such property was at least in the hundreds and
"countless" over the past two years in the southwest district of
the city alone."  (Doc. 91, Statement of Decision and Findings

**8**

Re: Pls.' Application for Prelim. Inj., 27:66.)  Even if only 23
claims for damages have been filed with the City, coupled with
direct evidence that seizure and destruction of property is part
of a sweep, the frequency of the sweeps conducted by the city,
and the number of homeless individuals who have been affected by
property seizures, Plaintiffs have satisfied the numerosity
requirement of 23(a)(2).

Plaintiffs have also established the impracticability of
joinder.  A court should consider "not only the class size but
other factors as well, including the geographic diversity of
class members, the ability of individual members to institute
separate suits, and the nature of the underlying action and the
relief sought."  *See, Nat'l Ass'n of Radiation Survivors v.
Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986).  Given Plaintiffs'
homeless condition and lack of resources, it is unlikely that
they will be able to adjudicate their rights by filing separate
suits.  Also, Plaintiff class are dispersed throughout the City
of Fresno, and many are without a fixed residence or moving
between shelters and streets.  Identifying and locating
Plaintiffs also make joinder impractical.  Defendants provide no
contrary evidence for impracticability.  Given the large number
of potential class members, the inability of homeless individuals
to institute separate suits, and the potential burden individual
suits would place on the judicial system, Plaintiffs have

**9**

satisfied their burden to show numerosity and impracticability of joinder.

### iii. Commonality

Rule 23(a) also demands that "there are questions of law or fact common to the class."  It does not require that all questions of law or fact be common to every single member of the class.  To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class.  *Dukes v. Walmart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).  Here, common questions of fact and law arise from Defendants' alleged destruction of Plaintiffs' personal property without notice pursuant to the duly adopted and regularly established practice of the City.

Commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *LaDuke v. Nelson*, 762 F2d 1318, 1332 (9th Cir. 1985).  Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality.  *Armstrong*, 275 F.3d at 868 (finding commonality requirement satisfied despite individual class members having different disabilities, since all suffered

similar harm as a result of defendant's actions).

This action involves a challenge to the City of Fresno's pattern and practice of conducting sweeps and allegedly seizing and destroying the personal property of homeless individuals without adequate notice or an opportunity to be heard and the absence of effective pre- or post-deprivation remedies.  (Doc. 113, Second Amended Complaint "SAC", ¶¶ 38-47; Prelim. Inj. Findings, ¶¶ 32-40).  Plaintiffs allege that the policy treats all homeless persons and their property the same, and each raid is conducted in a nearly identical fashion.  Plaintiffs also claim that the present case includes numerous common issues of law and fact:

1.  The nature of Defendants' policies, practices and conduct in conducting these sweeps, including whether Defendants provided adequate notice and whether the sweeps were sufficiently justified;

2.  Whether Defendants' policies, practices and conduct violate Class members' state and federal constitutional rights against unreasonable search and seizure;

3.  Whether Defendants' policies, practices and conduct violate Class members' due process rights under the California and United States

**11**

Constitutions;

4.   Whether Defendants' conduct violates Class

members' rights under California Civil Code

Sections 52 and 52.1, California Civil Code

Section 2080, California Government Code Section

815.6 and common law tort of conversion;

5.   Whether injunctive relief restraining further

unconstitutional and unlawful acts by Defendants

should be ordered by the court, and, if so, the

nature of that injunctive relief.

6.   The manner in which Plaintiffs' personal property

is seized and destroyed.

Defendants do not dispute Plaintiffs' contentions.  Instead
Defendants argue that Plaintiffs' fail to show how the majority
of homeless individuals, or "the remaining ninety percent (90%),"
have ever suffered any loss of personal property as part of one
of the City's sweeps or relocation efforts.  However,
"homelessness" alone is not the defining class criterion to make
any individual part of the class.[4]  Nor do Plaintiffs' so argue.
Members of the class will include only homeless individuals
"without residence" in the City of Fresno who "at any time after
October 17, 2003, [had their] personal belongings... taken and

_____

[4]   The Status of Plaintiffs as homeless is a fact common to
the class."  *Pottinger*, 720 F. Supp. at 958.

**12**

destroyed by one or more Defendants."  Such members of the class

share common questions of law and fact in the manner in which the

sweeps were carried out, the fact and content of any notice, the

seizure and destruction of personal property and whether any pre

or post deprivation remedy was afforded.

### iv.  Typicality

Rule 23(a)(3) demands that "the claims or defenses of the

representative parties are typical of the claims or defenses of

the class."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

2001).  "Typicality... is said... to be satisfied when each class

member's claim arises from the same course of events, and each

class member makes similar legal arguments to prove the

defendant's liability."  *Id.*  Under the rule's "permissive

standards," representative claims are typical if they are

"reasonably co-extensive with those of absent class members; they

need to be substantially identical."  *Hanlon v. Chrysler Corp.*,

150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs have sufficiently established typicality.  The

named Plaintiffs have verified under penalty of perjury the truth

of the information in their declarations.  The preliminary

injunction hearing testimony and declarations in the record

before the court establish that the named Plaintiffs each present

claims based on Defendants' policy of taking and destroying the

personal property of homeless individuals in the City of Fresno

**13**

without adequate notice or an opportunity to be heard or any

effective pre or post deposition remedy.  Each named Plaintiff

and every member of the proposed class allege that they have

suffered the deprivation of his or her personal property as a

result of this policy and by virtue of their status as living in

the streets.  The nature of the class and the types of property

lost in the raids are very similar and include personal property

such as tents, blankets, clothing, medicines and personal

effects.  (Doc. 113, SAC, ¶1.)  The class representatives also

claim to have suffered the same types of physical and emotional

harms that other class members have suffered.  Lastly, Plaintiffs

claims are also typical with respect to individual defendants.[5]

Plaintiffs challenge a uniform policy implemented by the

concerted efforts of the City of Fresno and the other named

Defendants, including Caltrans employees or Caltrans real

property.  Based on testimony and evidence in the record,

Plaintiffs have sufficiently established their claims are typical

of other class members.

---

[5] *See Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir.
2004)(a plaintiff may be able to satisfy the class requirements
where all injuries are the result of a conspiracy or concerted
schemes between defendants); *In re Textainer P'ship Sec. Litig.*,
2005 U.S. Dist. LEXIS 40974, at *32 (N.D. Cal. 2005)(holding that
class certification appropriate where plaintiffs' claims were
based on "a method of dealing more or less common to all
defendants,")

**14**

### v.   Adequacy of Representation

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Named Plaintiffs represent a diverse and typical cross-section of homeless men and women in Fresno.  Moreover, the representative Plaintiffs have demonstrated by their attendance at hearings, testimony, and continued participation in this lawsuit that they will maintain a continuing interest in pursuing the action aggressively and eliminating the oppressive policies to ensure justice is served.  *See, e.g. Walmart*, 474 F.3d at 1235 ("It is reasonable that plaintiffs who feel that their rights have been violated by [defendant's] behavior would want that behavior, and the injustice it perpetuates, to end.").  Plaintiffs have a continuing interest to pursue the action to the fullest.

Plaintiffs' counsel are experienced in class action matters, complex litigation, and the law in this area. They have the

**15**

resources necessary to prosecute this case. Plaintiffs' counsel have represented the named Plaintiffs from the inception of this case, have appeared before the Court in several proceedings, and have demonstrated to the Court their ability to competently serve as class counsel.  Plaintiffs have made a sufficient showing that the plaintiffs, as class representatives, will fairly and adequately protect the interests of the class.[6]

**C.    Rule 23(b)(2) Requirements**

Having satisfied the prerequisites set forth in Rule 23(a), Plaintiffs must also satisfy one of the three provisions of Rule 23(b).  Certification under Rule 23(b)(2) is appropriate when the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

**i.    Defendants Actions on Grounds Generally Applicable to the Class**

Plaintiffs argue that Defendants' policies regarding their treatment of the property of the homeless are generally applicable to the entire class defined.

Defendants rejoin that the over-breadth of the term "homeless" as used in the proposed definition for the class

_____

[6]  Defendants do not dispute that Plaintiffs have met the adequate representation requirement.

**16**

"defeats any contention that the City has acted in a manner
applicable to the class generally."  According to defendants
ninety percent (90%) of the potential class members do not live
on the streets and are not at risk of having their property
affected.  The City further points to their efforts over the past
seven months to "acknowledge and respect the personal property
rights of the homeless."[7]  As a result of these efforts, the City
maintains that no injunctive relief will be awarded.

        However, the definition proposed for the class is not
focused on the term "homeless," meaning individuals without
residence.  The focus is on those "without residence" whose
personal belongings have been or may be in the future taken or
destroyed by one or more of the defendants... after October 17,

[7]  These efforts include:

1.    removing garbage from homeless encampments,
2.    installing and servicing toilets and garbage bins,
3.    assigning full time security to ensure access to
      the public toilets,
4.    drafting a proposed City policy to be implemented
      to ensure that the City's future conduct in
      collecting refuse and relocating homeless
      encampments will protect the constitutional rights
      of the homeless,
5.    and creating a dedicated facility within the City
      of Fresno to allow homeless individuals living in
      the street to obtain shelter in a relatively
      unstructured environment... with access to social
      services, toilets, water and garbage removal.

(Doc. 135, Opposition, p. 4; *see also,* Doc. 136, Declaration
of K. Trost, ¶ 3)  The City also represented at the hearing that
it is complying in every respect with the preliminary injunction.

17

2003." Even assuming arguendo that ninety percent (90%) of the potential class members do not live on the street, ten percent (10%) of 8000 equals 800 and constitutes a significant population of class members that could potentially qualify as members of the proposed class.

Plaintiffs have sufficiently established that Defendants' alleged actions in conducting the raids and their treatment of the property of the Plaintiffs are generally applicable to the proposed class.

### ii.  Adequacy of Final Injunctive Relief

"Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003).  "In other words, in order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive relief." *Id.*  To determine whether money damages predominate, the court should examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit." *Walmart*, 474 F.3d at 1234.

In bringing this case, Plaintiffs argue that their motive was to seek injunctive relief against Defendants with respect to

**18**

the class as a whole.  Plaintiffs claim that the primary goal of bringing this litigation was to enjoin the Defendants from conducting raids on the City's homeless that resulted in the immediate loss and destruction of their property without notice or an opportunity to be heard.

Defendants to not dispute this.  Instead, Defendants argue the injunctive relief will vary between individuals because only ten percent (10%) of the class members are actually homeless. This is not the case since, as previously mentioned, the focus of identifying the class is not whether class members are homeless or how they are individually impacted, but rather that all members who are homeless have suffered confiscation of their property as a result of an unconstitutional pattern or practice by Defendants.  Defendants also argue that it is unlikely that Plaintiffs will qualify for a permanent injunction given the City's efforts, over the last several months, to address and resolve the concerns relating to homeless who live on the street. Defendants also point out that Plaintiffs are pursuing recovery for punitive damages, aside from injunctive relief.

However, "Plaintiffs seek preliminary and permanent injunctive relief on behalf of themselves and other homeless persons similarly situated to enjoin defendants from taking and destroying their personal property in violation of their constitutional, statutory and common law rights."  (Doc. 113,

**19**

SAC, Nature of Case, ¶4.)  To meet the requirements of Rule
23(b)(2) it is not necessary that Plaintiffs qualify for a
permanent injunction.  It is sufficient that Plaintiffs establish
that the primary claim for relief is injunctive relief.
Plaintiffs have met this burden under Rule 23(b)(2)

### D.   Rule 23(b)(3) Requirements

Plaintiffs also seek certification pursuant to the
superiority provision of Rule 23(b)(3), which requires:

> That the questions of law or fact common to the members
> of the class predominate over any questions affecting
> only individual members, and that a class action is
> superior to other available methods for the fair and
> efficient adjudication of the controversy.

### i.   Predominance

The Rule 23(b)(3) predominance inquiry tests "whether
proposed classes are sufficiently cohesive to warrant
adjudication by representation." *Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 623 (1997) (citation omitted).

> Rule 23(b)(3) focuses on the relationship between the
> common and individual issues. When common questions
> present a significant aspect of the case and they can
> be resolved for all members of the class in a single
> adjudication, there is clear justification for handling
> the dispute on a representative rather than on an
> individual basis.

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las
Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

**20**

There are numerous common issues that predominate in this case.  The dominant common issues in this case relate to the nature of Defendants' policies and practices and the nature and extent of their liability. Specifically, Plaintiffs will establish by common evidence:

(a)   The nature of Defendants' policies and practices toward the homeless, including:

   1.   the nature, timing, and extent of their "sweeps" or "raids" upon the homeless, the immediate seizure and
   2.   destruction of the property of the homeless,
   3.   the absence of meaningful notice or opportunity
   4.   to get out of the way of Defendants' destructive raids,
   5.   the failure to store any of the seized property,
   6.   the cost and feasibility of that storage and
   7.   the inability to retrieve or recover any of the seized personal property

(b)   That Defendants' policies, which result in the irrevocable destruction of Plaintiffs' property, are without probable cause and violate Plaintiffs' constitutional rights against unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article 1, § 13 of the California Constitution;

(c)   That Defendants' policies fail to give adequate notice or an opportunity to retrieve property once it has been taken and violate Plaintiffs constitutional rights to Due Process of

1  Law under the Fourteenth Amendment of the United States

2  Constitution and Article 1, § 7(A) of the California

3  Constitution;

4

(d)  That Defendants' policies are intended to single out

5

6  homeless people, have the purpose and effect of depriving

7  homeless people of their property and driving homeless

8  people from the city of Fresno and are based on Defendants'

9  animus towards this disfavored group and lack a rational

10  relationship to any legitimate government interest and

11

12  therefore violate Plaintiffs constitutional rights to Equal

13  Protection of the Laws under the Fourteenth Amendment of the

14  United States Constitution and United States Code, Section

15  1983 and under Article 1, Section 7(A) of the California

16  Constitution;

17

(e)  That Defendants' policies violate California Civil Code

18

19  Section 2080 *et seq.* in that, among other things, Defendants

20  have failed to safeguard the personal property of Plaintiffs

21  and members of the plaintiff class found on public land,

22  failed to inform the owners of the personal property within

23  a reasonable time of finding this property, failed to

24  document the property found, and failed to make restitution

25

26  of the property to its owners or to make arrangements to

27  permit them to retrieve it;

28

**22**

(f)   That Defendants' policies violate California Civil Code
      Section 52.1 because they constitute interference, and
      attempted interference, by threats, intimidation, and
      coercion, with Plaintiffs' exercise and enjoyment of rights
      secured by the Constitutions and laws of the United States
      and California, in violation of California Civil Code §
      52.1, and that as a result of such violations, Defendants
      are liable to Class Members for statutory damages

(g)   Whether and to what extent certain Defendants are liable to
      the Class for punitive damages, and the amount of punitive
      damages to which the plaintiff Class is entitled; and

(h)   That Defendants' policies constitute an unlawful conversion
      of Plaintiffs' property by denying Plaintiffs the possession
      of their property when Plaintiffs were at all relevant times
      the owners of personal property confiscated and destroyed by
      defendants and remain entitled to the possession of their
      personal property.

     In contrast to these numerous common issues of fact and of
law, individualized issues in this case are limited: whether each
plaintiff did, in fact, have property destroyed by the defendants
and, if so, calculation of the appropriate compensatory damages.
These types of individualized issues – which are present in
nearly all class actions – do not defeat class certification
under Rule 23(b)(3). *See Mendoza v. Zirkle Fruit Co.*, 222 F.R.D.

**23**

439, 447-48 (E.D. Wash. 2004).  And, since the majority of items taken (e.g., tents, bedding, clothes, personal effects) were common to most, if not all, class members, common evidence may be offered to establish the value of such items.  Individual calculation of specific damages can be accomplished by special master.  *See Local Joint Exec. Bd.*, 244 F.3d at 1163.

### a.    Individualized Damages

While individualized proof might be necessary in some exceptional cases, "[c]ourts routinely find Rule 23(b)(3)'s predominance requirement satisfied despite the need for individualized damage determinations when the fact of injury is common." *Lockwood Motors*, 162 F.R.D. at 582; *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.") (citation omitted); *Local Joint Exec. Bd.,* 244 F.3d at 1163 (holding that some "variation among individual [plaintiffs], as well as some potential difficulty of proof" was no bar to certification under 23(b)(3) "given the number and importance of common issues").

Here,  Plaintiffs have sufficiently established that there are a large number of common questions of fact and law which are a significant aspect of the liability case, which can be resolved for all members of the class in a single adjudication.

**24**

1

2

### ii.   Superiority of Class Action

To determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," Fed. R. Civ. P. 23(b)(3), a district court should consider:

> (A)   the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D)   the difficulties likely to be encountered in the management of a class action.

Id.

Given Plaintiffs' lack of education, resources, and social acceptance, class members are unlikely to institute separate suits.  Since the City started its unlawful sweeps there has been no separate lawsuit filed against the City by a homeless individual other than this case.  Homeless individuals are also typically unfamiliar with the federal court system and lack the knowledge and ability to pursue individual separate lawsuits.

The primary relief sought is injunctive relief.  To require individual class members to sue separately would be impractical, and an undue burden on the courts.  Individual results would result in duplicative, redundant discovery and require multiple

**25**

courts to analyze the same evidence or the same legal issues.
Given the potential size of the class, approximated at 800
individuals on the high end and 40 on the low end, and the
relatively minimal compensatory damages, the cost of proving
nominal damages in separate trials would outweigh the potential
recovery and make individual actions unfeasible.

### 5.   CONCLUSION

Based on the totality of all factors considered.  Plaintiffs
have established the requisites of Fed. R. Civ. P. §§ 23(a)(1)-
(4), 23(b)(2) and (b)(3) and shown that certification of the
class is superior to all other methods of adjudication.

Plaintiffs' motion to certify class is **GRANTED.**   The
following class definition shall apply:

> "All persons in the City of Fresno who were or are
> homeless, without residence, after October 17, 2003,
> and whose personal belongings have been unlawfully
> taken and destroyed in a sweep, raid, or clean up by
> any of the Defendants."

IT IS SO ORDERED.

Dated:   **August 14, 2007**                    **/s/ Oliver W. Wanger**

                                         UNITED STATES DISTRICT JUDGE

26