IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA KINCAID, et al., ) | No. CV-F-06-1445 OWW/SMS |
| ) | |
| ) | MEMORANDUM DECISION GRANTING |
| ) | IN PART AND DENYING IN PART |
| Plaintiffs, ) | CALTRANS DEFENDANTS' MOTIONS |
| ) | FOR SUMMARY JUDGMENT (Docs. |
| vs. ) | 183 & 199) AND PLAINTIFFS' |
| ) | MOTION FOR SUMMARY JUDGMENT |
| ) | AGAINST CALTRANS DEFENDANTS |
| CITY OF FRESNO, et al., ) | (Doc. 212) |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

Before the Court are the motions for summary judgment filed
by Defendants Will Kempton, Director of the California Department
of Transportation (Caltrans), and Defendants James Province,
Maintenance Area Superintendent in Fresno, District 6, and Daryl
Glenn, a Caltrans Landscape Maintenance Lead Worker in charge of
special programs personnel for Fresno Crew 652 in the Fresno Area
Branch of Caltrans District 6, and Plaintiffs' motion for summary
judgment against Defendants Province and Glenn.

Plaintiffs' motion was argued on April 25, 2008 and orally

granted in part and denied in part from the bench.  This Memorandum Decision is intended to amplify the Court's oral rulings made on April 25, 2008.[1]

This action concerns a number of clean-up operations (sweeps) conducted in the City of Fresno.  The certified class is comprised of "[a]ll persons in the City of Fresno who were or are homeless, without residence, after October 17, 2003, and whose personal belongings have been unlawfully taken and destroyed in a sweep, raid, or clean up by any of the Defendants."  For more than a year, Defendants implemented a policy of seizing and immediately destroying personal property of homeless individuals in an effort to clean up the City of Fresno.  A number of these clean up efforts occurred on property belonging to Caltrans.  The SAC alleges nine claims for relief:

> 1.  First Claim for Relief – Denial of Constitutional Right Against Unreasonable Search and Seizure in violation of the Fourth Amendment pursuant to 28 U.S.C. § 1983;
>
> 2.  Second Claim for Relief – Denial of Constitutional Right to Due Process of Law in violation of the Fourteenth Amendment pursuant to 28 U.S.C. § 1983;
>
> 3.  Third Claim for Relief – Denial of Constitutional Right to Equal Protection of the Laws in violation of the Fourteenth Amendment pursuant to 28 U.S.C. § 1983;
>
> 4.  Fourth Claim for Relief – Denial of Constitutional Right Against Unreasonable Search and Seizure in violation of California Constitution, Article I, § 13;

---

[1]Plaintiffs' motion for summary judgment against the City Defendants is resolved by separate Memorandum Decision.

1         5.   Fifth Claim for Relief - Denial of
     Constitutional Right to Due Process of Law in
2    violation of California Constitution Article
     I, § 7(A);

3

4         6.   Sixth Claim for Relief - Denial of
     Constitutional Right to Equal Protection of
     the Laws in violation of California
5    Constitution, Article I, § 7(A);

6         7.   Seventh Claim for Relief - Violation of
     California Civil Code § 2080 *et seq.* and
7    California Government Code § 815.6;

8         8.   Eighth Claim for Relief - Violation of
     California Civil Code § 52.1;

9
          9.   Ninth Claim for Relief - Common Law
10   Conversion.

11   The SAC prays for injunctive relief enjoining Defendants from

12   continuing or repeating the alleged unlawful policies, practices

13   and conduct; for declaratory relief that Defendants' alleged

14   policies, practices and conduct were in violation of Plaintiffs'

15   rights under the United States and California Constitutions and

16   the laws of the United States and California; for return of

17   Plaintiffs' property; for damages according to proof but no less

18   than $4,000 per incident under California Civil Code §§ 52 and

19   52.1 and California Government Code § 815.6; for punitive and

20   exemplary damages; and for attorneys' fees and costs of suit.

21        A.   <u>GOVERNING STANDARDS</u>.

22        Summary judgment is proper when it is shown that there

23   exists "no genuine issue as to any material fact and that the

24   moving party is entitled to judgment as a matter of law."

25   Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an

26   element of a claim or a defense, the existence of which may

affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Materiality is determined by the substantive law governing a claim or a defense. *Id.* The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party. *Id.*

The initial burden in a motion for summary judgment is on the moving party. The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.*, 809 F.2d at 630. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id.* The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id.* As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-1103 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract. Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant. Further, because either plaintiff or defendant can have the

4

ultimate burden of persuasion at trial, we
refer to the party with and without the
ultimate burden of persuasion at trial rather
than to plaintiff and defendant.   Finally, we
distinguish among the initial burden of
production and two kinds of ultimate burdens
of persuasion: The initial burden of
production refers to the burden of producing
evidence, or showing the absence of evidence,
on the motion for summary judgment; the
ultimate burden of persuasion can refer
either to the burden of persuasion on the
motion or to the burden of persuasion at
trial.

A moving party without the ultimate burden of
persuasion at trial - usually, but not
always, a defendant - has both the initial
burden of production and the ultimate burden
of persuasion on a motion for summary
judgment ... In order to carry its burden of
production, the moving party must either
produce evidence negating an essential
element of the nonmoving party's claim or
defense or show that the nonmoving party does
not have enough evidence of an essential
element to carry its ultimate burden of
persuasion at trial ... In order to carry its
ultimate burden of persuasion on the motion,
the moving party must persuade the court that
there is no genuine issue of material fact
....

If a moving party fails to carry its initial
burden of production, the nonmoving party has
no obligation to produce anything, even if
the nonmoving party would have the ultimate
burden of persuasion at trial ... In such a
case, the nonmoving party may defeat the
motion for summary judgment without producing
anything ... If, however, a moving party
carries its burden of production, the
nonmoving party must produce evidence to
support its claim or defense ... If the
nonmoving party fails to produce enough
evidence to create a genuine issue of
material fact, the moving party wins the
motion for summary judgment ... But if the
nonmoving party produces enough evidence to
create a genuine issue of material fact, the
nonmoving party defeats the motion.

5

In *Carmen v. San Francisco Unified School District*, *supra*, 237 F.3d at 1031, the Ninth Circuit held:

> [T]he district court may determine whether there is a genuine issue of material fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers.  Though the court has discretion in appropriate circumstances to consider other materials, it need not do so.  The district court need not examine the entire file for evidence establishing a genuine issue of material fact, where the evidence is not set forth in the opposing papers with adequate references to that it could conveniently be found.

The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment."  *Id.*

B.   <u>UNDISPUTED FACTS</u>.

With the exception of the professional job titles and duties of Defendant Kempton and individual Caltrans Defendants and certain other admitted facts, the balance of the facts in this action are disputed and will be resolved at trial. Because the

parties' respective statements of undisputed facts and responses thereto are voluminous this Memorandum Decision does not describe them in any further detail.

    C.  **DEFENDANT WILL KEMPTON**.

    Defendant Will Kempton, sued in his official capacity as Caltrans' Director and only in regard to the First, Second and Third Claims for Relief alleging violation of Federal constitutional rights, moves for summary judgment on the ground that he is not a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

    Plaintiffs acknowledge that damages are not available against Defendant Kempton.  Plaintiffs assert that the only relief sought against Defendant Kempton is injunctive and declaratory relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

    Defendant Kempton argues that Plaintiffs' requests for injunctive and declaratory relief do not target Caltrans policies, practices and customs: "Ratification, acquiescence, and other theories of vicarious liability are alleged in conclusory fashion in the SAC, but almost no positive acts or omissions are charged nor did discovery [sic]."  Defendant Kempton asserts that Caltrans' policies, customs and practices are not the genesis of the alleged constitutional violations: "Plaintiffs have charged codefendants with unconstitutional conduct then attempted to ensnare the Caltrans Defendants, including Defendant Kempton, with blanket claims of involvement or ratification."

1    Plaintiffs respond that they need not establish that
2  Caltrans had an official policy of violating the Constitution in
3  order to obtain relief.  Plaintiffs cited *Truth v. Kent School*
4  *Dist.*, 499 F.3d 999, 1008 (9th Cir.2007): "*Monell's* requirements
5  do not apply where the plaintiffs only seek prospective relief
6  ... *See Chaloux v. Killeen*, 886 F.2d 247, 250-51 (9th Cir.1989)."
7  Plaintiffs further cite *National Audobon Society, Inc. v. Davis*,
8  307 F.3d 835, 846-847 (9th Cir.2002).  There, the Ninth Circuit
9  "declined to read additional 'ripeness' and 'imminence'
10 requirements into the *Ex Parte Young* exception to Eleventh
11 Amendment immunity in actions for declaratory relief beyond those
12 already imposed by a general Article III and prudential ripeness
13 analysis." *Id.* at 847.  The state had argued for a "ripeness"
14 component in the *Ex Parte Young* exception based on cases
15 addressing whether a named state official has direct authority
16 and practical ability to enforce the challenged statute.  *Id.* at
17 846.  *See, e.g., Snoeck v. Brussa*, 153 F.3d 984, 987 (9th
18 Cir.1998)("As *Ex Parte Young* explains, the officers of the state
19 must be cloaked with a duty to enforce the laws of the state and
20 must threaten or be about to commence civil or criminal
21 proceedings to enforce an unconstitutional act.").
22    Plaintiffs argue that evidence shows that it is customary
23 for Caltrans to work with the City in facilitating the sweeps of
24 homeless encampments that are conducted on Caltrans property and
25 that a permanent injunction is necessary to prevent Caltrans from
26 providing assistance in the form of equipment and personnel to

destroy that property.  Plaintiffs asserts that Caltrans itself appears to have destroyed property of the homeless even after the Court's Preliminary Injunction.  Plaintiffs argue that this evidence demonstrates the need for a permanent injunction to prevent Caltrans from continuing this conduct and that such an injunction is properly directed to Defendant Kempton because he has direct authority over Caltrans.

Defendant Kempton's motion for summary judgment is DENIED. The existence of disputed issues of fact as to the participation in the seizure and immediate destruction of Plaintiffs' property by Caltrans through Defendants Province and Glenn preclude any grant of permanent injunctive relief until the completion of trial.

E.  <u>ALLEGED CONSTITUTIONAL VIOLATIONS</u>.

Defendants move for summary judgment in their favor in connection with the federal constitutional claims alleged against them.

Defendants note that Plaintiffs had no legal right to encamp on Caltrans' rights-of-way.  Defendants argue that the rights-of-way are public property belonging to the State of California, but its public use is for transportation purposes only.  Caltrans has a statutory duty to improve and maintain the state highways. California Streets & Highways Code § 91.  The term "highway" "includes bridges, culverts, curbs, drains, and all works incidental to highway construction, improvement, and maintenance."  California Streets & Highways Code § 23.

"Maintenance" includes "[t]he preservation and keeping of rights-of-way, and each type of roadway, structure, safety convenience or device, planting, illumination equipment, and other facility, in the safe and usable condition to which it has been improved or constructed, but does not include reconstruction or other improvement."  California Streets & Highway Code § 27(a). Defendants assert that Caltrans' rights-of-way are a design element that provide a clear recovery zone for errant automobiles, *see* Exhibit 1; Defendant Kempton's Motion for Summary Judgment; Caltrans Design Manual, Topic 309.1(2), as well as access for emergency and maintenance vehicles, firebreaks, and adequate drainage, *see* Exhibit 2; Defendant Kempton's Motion for Summary Judgment; Caltrans Maintenance Manual, Ch. D1. California Streets & Highways Code § 91.6 provides that Caltrans "shall, within its maintenance programs relating to litter cleanup and abatement, assign a high priority to litter deposited along state highway segments adjoining storm drains, streams, rivers, waterways, beaches, the ocean, and other environmentally sensitive areas."  Caltrans' Maintenance Manual, relying on Streets & Highways Code § 91.6, provides that "[i]n addition, removal efforts should be focused on routes to airports, commuter routes, and heavily traveled inter-city routes."

     1.   Fourth Amendment.

Plaintiffs allege that their rights under the Fourth Amendment against unreasonable searches and seizures were violated by Defendants taking and destroying their personal

10

property, without providing either adequate notice or an opportunity to retrieve personal possessions before they were destroyed, and without a legitimate government interest.

Defendants contend they are entitled to summary judgment on this claim because no Caltrans employee seized any personal property of Plaintiffs.

Plaintiffs argue that the fact none of these Defendants personally and directly seized their personal property and destroyed it does not entitle them to summary judgment.

Plaintiffs cite *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir.1978):

> A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirming act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made ... Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

Plaintiffs refer to evidence that Defendant Glenn provided Caltrans' equipment and employees, inmate work crews and supervision to the City Defendants, thereby facilitating the City-initiated clean-ups. Plaintiffs refer to evidence that Defendant Province was kept informed of Defendant Glenn's actions

11

1  in regard to the clean-ups and approved the resources and other

2  support given by Caltrans to the City to aid the clean-up

3  efforts.   Plaintiffs cite *Larez v. City of Los Angeles*, 946 F.2d

4  630, 646 (9th Cir.1991):

5           Supervisory liability is imposed against a
          supervisory official in his individual
6          capacity for his 'own culpable action or
          inaction in the training, supervision, or
7          control of his subordinates,' ... for his
          '"acquiesce[nce] in the constitutional
8          deprivations of which [the] complaint is
          made,"' ..., or for conduct that showed a
9          '"reckless or callous indifference to the
          rights of others."'

10 Plaintiffs argue that Defendant Province's knowledge of Caltrans'

11 participation in the City's clean-ups and his acquiescence to it

12 "was a key link in the causal chain leading to the violation of

13 Plaintiffs' constitutional rights, and gives rise to his

14 individual liability."   Plaintiffs argue that it is irrelevant

15 whether the Caltrans Defendants had the opportunity or authority

16 to intervene in, or stop, the City's conduct because the Caltrans

17 Defendants "never ceased *their own* support and facilitation of

18 the Clean-Ups."   Plaintiffs contend that the Caltrans Defendants

19 knew how the clean-ups were conducted and that Plaintiffs'

20 property was summarily destroyed, yet kept providing equipment,

21 work crews and supervision to facilitate them.

22       Because the facts are disputed as to the roles and conduct

23 of the Caltrans Defendants, summary judgment for either party

24 with regard to Plaintiffs' claim of Fourth Amendment violation is

25 DENIED.

26

                                    12

2. **Fourteenth Amendment Due Process**.

Plaintiffs' Fourteenth Amendment Due Process Clause claim is grounded on procedural due process.

The Plaintiffs' personal possessions constitute property for purposes of the Fourteenth Amendment. *See Fuentes v. Shevin*, 407 U.S. 67, 84 (1972). "The central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard at a meaningful time and in a meaningful manner." *Orloff v. Cleland*, 708 F.2d 372, 379 (9th Cir.1983). As explained in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-434 (1982):

> As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest ... And that is why the Court has stressed that, when a 'statutory scheme makes liability an important factor in the State's determination ..., the State may not, consistent with due process, eliminate consideration of that factor in its prior hearing ... To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.

"We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in '"extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."'" *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53

1  (1993).   When a protected property interest is threatened, three

2  factors must be considered to determine whether the basic

3  requirements of procedural due process have been met:

4      "First, the private interest that will be
       affected by the official action; second, the
5      risk of an erroneous deprivation of such
       interest through the procedures used, and the
6      probable value, if any, of additional or
       substitute procedural safeguards; and
7      finally, the Government's interest, including
       the function involved and the fiscal and
8      administrative burdens that additional or
       substitute procedural requirement would
9      entail."

10 *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

11      Plaintiffs argue that they are entitled to summary judgment

12 that the City Defendants violated their right to procedural due

13 process.   Plaintiffs do not discuss the adequacy of notice but,

14 rather, focus solely on the immediate destruction of property

15 following the seizures during the clean ups.   Plaintiffs contend

16 that the record in this action establishes that this immediate

17 destruction prevented Plaintiffs from any opportunity to present

18 a claim of entitlement to the property destroyed.

19      Plaintiffs argue that the Caltrans Defendants are not

20 entitled to summary judgment with regard to this claim for the

21 same reasons argued in opposition to the Fourth Amendment claim,

22 i.e., evidence that the Caltrans Defendants facilitated the

23 clean-ups by providing equipment, work crews and supervision.

24      The parties' respective motions for summary judgment with

25 regard to Plaintiffs' claim of violation of procedural due

26 process is DENIED because factual issues exist.   However,

14

assuming *arguendo* that the Caltrans Defendants knowingly facilitated the immediate destruction of Plaintiffs' personal property as Plaintiffs assert, there is a question how the Caltrans Defendants facilitated or participated in the *City's* alleged failure to provide notice and an opportunity to be heard prior to the destruction of personal property.  Although the Caltrans Defendants were not in a position to provide procedural due process, establishment of knowing participation with notice of the immediate destruction practice could provide a basis for liability.

        3.   <u>Fourteenth Amendment Equal Protection</u>.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons ... We have attempted to reconcile the principle with reality by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).

As discussed in the accompanying Memorandum Decision as to the City Defendants, the respective motions for summary judgment are DENIED; factual issues exist as to whether persons other than the homeless had their personal property immediately destroyed.

F.   <u>QUALIFIED IMMUNITY</u>.

Defendants Province and Glenn move for summary judgment in connection with the federal constitutional claims against them on the basis of qualified immunity.  Plaintiffs argue that summary judgment on this ground should be denied.

Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The Ninth Circuit employs a three-part test to determine whether an individual is entitled to qualified immunity.  First, the specific right allegedly violated must be identified.  Secondly, it must be determined whether that right was so clearly established as to alert a reasonable officer to its constitutional parameters.  Third, if the law is clearly established, it must be determined whether a reasonable officer could have believed lawful the particular conduct at issue.  *Kelly v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).  The plaintiff in a Section 1983 action bears the burden of proving that the right allegedly violated was clearly established at the time of the officer's allegedly impermissible conduct.  *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir.

1993).  A law is "clearly established" when "the contours of that right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  *Anderson v. Creighton*, 489 U.S. 635, 640 (1987).  To demonstrate clearly established law at the time of the events in question, the plaintiff

> 'must show that <u>the particular facts</u> of [the] case support a claim of clearly established right.' ... This does not mean that the 'exact factual situation' of [the case] must have been previously litigated ... '[S]pecific binding precedent is not required to show that a right is clearly established for qualified immunity purposes.' ... Absent binding precedent, 'a court should look at all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established.' ... Nonetheless, '[t]he contours of the [clearly established] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' ....

*Doe By and Through Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995).  The Supreme Court has set forth a two-pronged inquiry to resolve all qualified immunity claims. First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.  However, if the court determines that the conduct did violate a constitutional right,

17

1  *Saucier*'s second prong requires the court to determine whether,

2  at the time of the violation, the constitutional right was

3  "clearly established."  *Id*.  "The relevant, dispositive inquiry

4  in determining whether a right is clearly established is whether

5  it would be clear to a reasonable officer that his conduct was

6  unlawful in the situation he confronted."  *Id*. at 202.

7       This inquiry is wholly objective and is undertaken in light

8  of the specific factual circumstances of the case.  *Id*. at 201.

9  Even if the violated right is clearly established, *Saucier*

10 recognized that, in certain situations, it may be difficult for a

11 police officer to determine how to apply the relevant legal

12 doctrine to the particular circumstances he faces.  If an officer

13 makes a mistake in applying the relevant legal doctrine, he is

14 not precluded from claiming qualified immunity so long as the

15 mistake is reasonable.  If "the officer's mistake as to what the

16 law requires is reasonable, ... the officer is entitled to the

17 immunity defense."  *Id*. at 205.  In *Brosseau v. Haugan*, 543 U.S.

18 194 (2004), the Supreme Court reiterated:

19            Qualified immunity shields an officer from
             suit when she makes a decision that, even if
20           constitutionally deficient, reasonably
             misapprehends the law governing the
21           circumstances she confronted.  *Saucier v.
             Katz*, 533 U.S., at 206 (qualified immunity
22           operates 'to protect officers from the
             sometimes "hazy border between excessive and
23           acceptable force"').  Because the focus is on
             whether the officer had fair notice that her
24           conduct was unlawful, reasonableness is
             judged against the backdrop of the law at the
25           time of the conduct.  If the law at that time
             did not clearly establish that the officer's
26           conduct would violate the Constitution, the

                                  18

officer should not be subject to liability
or, indeed, even the burdens of litigation.

It is important to emphasize that this
inquiry 'must be undertaken in light of the
specific context of the case, not as a broad
general proposition.' *Id.*, at 201. As we
previously said in this very context:

'[T]here is no doubt that *Graham v.
Connor, supra*, clearly establishes
the general proposition that use of
force is contrary to the Fourth
Amendment if it is excessive under
objective standards of
reasonableness. Yet, that is not
enough. Rather, we emphasized in
*Anderson* [*v. Creighton*] "that the
right the official is alleged to
have violated must have been
'clearly established' in a more
particularized, and hence more
relevant, sense: The contours of
the right must be sufficiently
clear that a reasonable officer
would understand that what he is
doing violates that right.' ...
The relevant, dispositive inquiry
in determining whether a right is
clearly established is whether it
would be clear to a reasonable
officer that his conduct was
unlawful in the situation he
confronted.' ...

The Court of Appeals acknowledged this
statement of law, but then proceeded to find
fair warning in the general tests set out in
*Graham* and *Garner* ... In so doing, it was
mistaken. *Graham* and *Garner,* following the
lead of the Fourth Amendment's text, are cast
at a high level of generality. See *Graham v.
Connor*, *supra*, at 396 ('"[T]he test of
reasonableness under the Fourth Amendment is
not capable of precise definition or
mechanical application"'). Of course, in an
obvious case, these standards can 'clearly
establish' the answer, even without a body of
relevant case law.'

**543 U.S. at 198-199.**

1    Plaintiffs argue that Defendants are not entitled to summary

2  judgment on the ground of qualified immunity.  Plaintiffs cite

3  *San Jose Charter of Hells Angels Motorcycle Club v. City of San*

4  *Jose*, 402 F.3d 962, 977-978 (9th Cir.2005): "These cases would

5  have alerted any reasonable officer that the Fourth Amendment

6  forbids ... the destruction of a person's property, when that

7  destruction is unnecessary - *i.e.,* when less instrusive, or less

8  destructive, alternatives exist."   Plaintiffs also cite *Logan v.*

9  *Zimmerman Brush Co., supra*, 455 U.S. at 433: "[I]t has become a

10  truism that '*some* form of hearing' is required before the owner

11  is finally deprived of a protected property interest."

12    Because the facts are disputed, the respective motions for

13  summary judgment on the ground of qualified immunity are DENIED.

14    D.   <u>STATE LAW CLAIMS FOR DAMAGES</u>.

15    Defendants move for summary judgment on the state law claims

16  for relief to the extent that the SAC seeks money damages on the

17  ground that Plaintiffs did not file a claim against their

18  employing entity, Caltrans, as required by the California

19  Government Claim Act before bringing suit against Defendants

20  Province and Glenn.

21    Plaintiffs oppose summary judgment on this ground.   As

22  explained in *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 762

23  (2002):

24         "'[A]n action for specific relief does not
           lose its exempt status solely because
25         incidental money damages are sought.' ... The
           claims filing requirement remains applicable
26         to actions in which money damages are not

1                  incidental or ancillary to any specific
                relief that is also sought, but the primary
2                  purpose of the action.

3  Plaintiffs assert that a "class-action civil rights suit seeking

4  to overturn a City policy is not subject to the claims

5  requirement, even when it seeks damages in addition to equitable

6  relief."[2]

7       To make the determination whether a government claim is

8  required, California courts analyze the various claims for relief

9  in the complaint at issue.  *See Loehr v. Ventura County Community*

10  *College Dist.,* 147 Cal.App.3d 1071, 1080-1082 (1983); *Gatto,*

11  *supra*, 98 Cal.App.4th at 762; *Lozada v. City and County of San*

12  *Francisco*, 145 Cal.App.4th 1139, 1168-1170 (2006); *see also*

13  *Independent Housing Services of San Francisco v. Fillmore Center*

14  *Associates*, 840 F.Supp. 1328, 1358 (N.D.Cal.1993)*:*

15                  While plaintiffs do seek damages, their
                request for an injunction declaring that the
16                  Agency is in violation of the handicap access
                laws and must comply with them in the future
17                  is of great weight and not just ancillary to
                the request for damages.  IHS's potential
18                  damages are small and particularly
                inconsequential compared to the effect of the
19                  declarations it seeks.  The court therefore
                finds that no statutory notice was required
20                  under the Tort Claims Act.

21       The SAC prays for no less than $4,000.00 "per incident"

22

23       [2]Plaintiffs note that the Court, in granting Plaintiffs'
24  motion for class certification, stated, in discussing the
superiority of a class action under Rule 23(b)(3), Federal Rules of
Civil Procedure, that "[t]he primary relief sought in injunctive
25  relief."  *Kincaid v. City of Fresno,* 244 F.R.D. 597, 607
(E.D.Cal.2007).  Because the Court's statement was made in the
26  context of an entirely different issue, it does not bind the Court.

under California Civil Code §§ 52 and 52.1, California Government Code § 815.6, and under the common law doctrine of conversion. Although there does not yet appear to be a firm estimate of the number of class members, the class is "[a]ll persons in the City of Fresno who were or are homeless, without residence, after October 17, 2003, and whose personal belongings have been unlawfully taken and destroyed in a sweep, raid, or clean up by any of the Defendants."   In their motion for class certification, Plaintiffs represented that "hundreds" of homeless persons in Fresno meet the class definition.   If there are 200 class members, the damages sought by Plaintiffs totals $800,000.00.   In addition, Plaintiffs seek exemplary and punitive damages.   Here, it cannot be concluded that Plaintiffs' prayer for damages are not small or incidental to their prayers for injunctive and declaratory relief.

     In addition, Plaintiffs contend that a claim for return of property is not subject to the claim requirement. *Minsky v. City of Los Angeles*, 11 Cal.3d 113, 123-124 (1974).

     Plaintiffs reliance on *Minsky* is misplaced. The gravamen of this litigation is the immediate destruction of unattended personal property.  Plaintiffs make no claim for the return of property; nor is there any suggestion there exists property to return.  Plaintiffs have emphasized that their property is destroyed and lost forever.

     Plaintiffs have not complied with the claim requirements of the California Tort Claim Act with regard to Defendants Province

and Glenn.  Defendants Province and Glenn's motion for summary judgment on the state law claims for damages is GRANTED; Plaintiffs' motion for summary judgment against Defendants Province and Glenn on the state law claims for damages is DENIED.

     **E.**   <u>PRAYERS FOR INJUNCTIVE AND DECLARATORY RELIEF</u>.

     Plaintiffs and the Caltrans Defendants move respectively for summary judgment on the prayers for permanent injunctive and declaratory relief.  The Caltrans Defendants refer to the City's administrative order adopted following the preliminary injunction and further assert that any injunctive relief should not include Defendants Glenn and Province.  Plaintiffs argue that such relief is still necessary because the City could revise or disregard the administrative order.  These issues are subject to proof.

     The parties' respective motions for summary judgment are DENIED; whether the injunctive or declaratory remedies sought are available and necessary cannot be determined until after trial.

<u>CONCLUSION</u>

     For the reasons stated above:

     **A.**  Defendant Kempton's motion for summary judgment is DENIED;

     **B.**  Plaintiffs' motion for summary judgment against Defendants Province and Glenn is DENIED;

     **C.**  Defendants Province and Glenn's motion for summary judgment is GRANTED as to the state law claims for damages asserted against them and DENIED on all other grounds.

1    **D.   Counsel for the Caltrans Defendants shall prepare and**

2    **lodge a form of order that the rulings set forth in this**

3    **Memorandum Decision within five (5) days following the date of**

4    **service of this decision.**

5    IT IS SO ORDERED.

6    **Dated:   May 12, 2008**                    /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE

24