IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA KINCAID, et al., ) | No. CV-F-06-1445 OWW |
| ) | |
| ) | MEMORANDUM DECISION AND |
| ) | ORDER GRANTING IN PART AND |
| Plaintiff, ) | DENYING IN PART PLAINTIFFS' |
| ) | MOTION FOR SUMMARY JUDGMENT |
| vs. ) | AS TO LIABILITY AGAINST THE |
| ) | CITY DEFENDANTS (Doc. 212) |
| ) | |
| CITY OF FRESNO, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____) | |

Before the Court is Plaintiffs' motion for summary judgment
as to liability against Defendants City of Fresno; Chief of
Police Jerry Dyer; Fresno Police Department Captain Greg Garner;
Fresno Police Officer Reynaud Wallace; John Rogers, Manager of
the Community Sanitation Division of the City of Fresno; and
Phillip Weathers, employee of the Community Sanitation Division
of the City of Fresno.

Plaintiffs' motion was argued on April 25, 2008 and orally
granted in part and denied in part from the bench.  This
Memorandum Decision is intended to amplify the Court's oral

1

1   rulings made on April 25, 2008.[1]

2       This action concerns a number of clean-up operations
3   (sweeps) conducted by Defendants.  The certified class is
4   comprised of "[a]ll persons in the City of Fresno who were or are
5   homeless, without residence, after October 17, 2003, and whose
6   personal belongings have been unlawfully taken and destroyed in a
7   sweep, raid, or clean up by any of the Defendants.  For more than
8   a year, Defendants implemented a policy of seizing and
9   immediately destroying personal property of homeless individuals
10  in an effort to clean up the City of Fresno.  A number of these
11  clean up efforts occurred on property belonging to Caltrans.  The
12  SAC alleges nine claims for relief:

13          1.  First Claim for Relief - Denial of
                Constitutional Right Against Unreasonable
14              Search and Seizure in violation of the Fourth
                Amendment pursuant to 28 U.S.C. § 1983;
15
                2.  Second Claim for Relief - Denial of
16              Constitutional Right to Due Process of Law in
                violation of the Fourteenth Amendment
17              pursuant to 28 U.S.C. § 1983;

18              3.  Third Claim for Relief - Denial of
                Constitutional Right to Equal Protection of
19              the Laws in violation of the Fourteenth
                Amendment pursuant to 28 U.S.C. § 1983;
20
                4.  Fourth Claim for Relief - Denial of
21              Constitutional Right Against Unreasonable
                Search and Seizure in violation of California
22              Constitution, Article I, § 13;

23              5.  Fifth Claim for Relief - Denial of
                Constitutional Right to Due Process of Law in
24

      _____

25      [1]Plaintiffs' motion for summary judgment against the Caltrans
26  Defendants and the Caltrans Defendants' motions for summary
    judgment are resolved by separate Memorandum Decision.

                                2

violation of California Constitution Article
I, § 7(A);

6.   Sixth Claim for Relief - Denial of
Constitutional Right to Equal Protection of
the Laws in violation of California
Constitution, Article I, § 7(A);

7.   Seventh Claim for Relief - Violation of
California Civil Code § 2080 *et seq.* and
California Government Code § 815.6;

8.   Eighth Claim for Relief - Violation of
California Civil Code § 52.1;

9.   Ninth Claim for Relief - Common Law
Conversion.

The SAC prays for injunctive relief enjoining Defendants from

continuing or repeating the alleged unlawful policies, practices

and conduct; for declaratory relief that Defendants' alleged

policies, practices and conduct were in violation of Plaintiffs'

rights under the United States and California Constitutions and

the laws of the United States and California; for return of

Plaintiffs' property; for damages according to proof but no less

than $4,000 per incident under California Civil Code §§ 52 and

52.1 and California Government Code § 815.6; for punitive and

exemplary damages; and for attorneys' fees and costs of suit.

A.   <u>GOVERNING STANDARDS</u>.

Summary judgment is proper when it is shown that there

exists "no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an

element of a claim or a defense, the existence of which may

affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v.*

*Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense.  *Id*.  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  *Id*.

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  *T.W. Elec.*, 809 F.2d at 630.  The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial."  *Id*.  The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint."  *Id*.  As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-1103 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract.  Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant.  Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ultimate burden of persuasion at trial rather
than to plaintiff and defendant.  Finally, we
distinguish among the initial burden of
production and two kinds of ultimate burdens
of persuasion: The initial burden of
production refers to the burden of producing
evidence, or showing the absence of evidence,
on the motion for summary judgment; the
ultimate burden of persuasion can refer
either to the burden of persuasion on the
motion or to the burden of persuasion at
trial.

A moving party without the ultimate burden of
persuasion at trial - usually, but not
always, a defendant - has both the initial
burden of production and the ultimate burden
of persuasion on a motion for summary
judgment ... In order to carry its burden of
production, the moving party must either
produce evidence negating an essential
element of the nonmoving party's claim or
defense or show that the nonmoving party does
not have enough evidence of an essential
element to carry its ultimate burden of
persuasion at trial ... In order to carry its
ultimate burden of persuasion on the motion,
the moving party must persuade the court that
there is no genuine issue of material fact
....

If a moving party fails to carry its initial
burden of production, the nonmoving party has
no obligation to produce anything, even if
the nonmoving party would have the ultimate
burden of persuasion at trial ... In such a
case, the nonmoving party may defeat the
motion for summary judgment without producing
anything ... If, however, a moving party
carries its burden of production, the
nonmoving party must produce evidence to
support its claim or defense ... If the
nonmoving party fails to produce enough
evidence to create a genuine issue of
material fact, the moving party wins the
motion for summary judgment ... But if the
nonmoving party produces enough evidence to
create a genuine issue of material fact, the
nonmoving party defeats the motion.

In *Carmen v. San Francisco Unified School District*, *supra*, 237

5

F.3d at 1031, the Ninth Circuit held:

> [T]he district court may determine whether there is a genuine issue of material fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers.  Though the court has discretion in appropriate circumstances to consider other materials, it need not do so.  The district court need not examine the entire file for evidence establishing a genuine issue of material fact, where the evidence is not set forth in the opposing papers with adequate references to that it could conveniently be found.

The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment."  *Id.*

     B.   STATEMENT OF ADMITTED FACTS.

     At the hearing on the motion for summary judgment, the City Defendants conceded that the City conducted 14 clean up efforts in which the residents of a temporary encampment were asked to relocate themselves and their personal property before the area was cleared by City crews:

6

A.   February 4, 2004 - Santa Clara Avenue;

B.   August 4, 2004 - Golden State and Ventura Street off ramp;

C.   January 2005 - E Street, F Street and the Monterey Street overpass;

D.   June 27, 2005 - California Street and Golden State, near Highway 41;

E.   October 15, 2005 - Santa Clara and G or E Streets;

F.   January 11, 2006 - Santa Clara and G or E Streets;

G.   January 18, 2006 - Santa Clara and G or E Streets;

H.   February 12, 2006 - Monterey Street overpass;

I.   March 2006 - H Street and Monterey Street overpass;

J.   April 6, 2006 - Santa Clara and G or E Streets;

K.   May 3, 2006 - E Street;

L.   May 25, 2006 - Santa Clara and G or E Streets;

M.   June 22, 2006 - E Street and Santa Clara;

N.   August 26, 2006 - E Street

The City Defendants conceded at the hearing that the clean ups on these 14 days were conducted pursuant to the City's policy previously found to be unlawful by the Court during the preliminary injunction proceedings.

     With the exception of the professional job titles and duties of the individual City Defendants and certain other admitted facts, the balance of the facts in this action are disputed and

7

will be resolved at trial. Because the parties' respective statements of undisputed facts and responses thereto are voluminous, comprising more than one hundred pages, this Memorandum Decision does not describe them in any further detail.

    C.  **PLAINTIFFS' MOTION AGAINST CITY DEFENDANTS**.

Plaintiffs move for summary judgment against the City Defendants on all claims alleged in the SAC.

    1.  Federal Constitutional Claims.

    a.  Fourth Amendment.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir.2005). A seizure is unreasonable if the government's legitimate interests in the seizure outweigh the individual's legitimate expectations of privacy. *See Maryland v. Buie*, 494 U.S. 325, 331 (1990). A seizure for Fourth Amendment purposes may also occur when there is some meaningful interference with an individual's possessory interest in property. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 63 (1992). Seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Fourth Amendment has taken place. *Id.* at 68. An officer who comes across an individual's property in a public area may seize it only if Fourth Amendment standards are satisfied - for example, if the items are evidence of a crime or contraband. *Id.*

The City Defendants do not respond to the merits of Plaintiffs' motion that the seizure and immediate destruction of

8

1 unattended personal property of homeless persons violates the

2 Fourth Amendment.  Defendants did not dispute this argument at

3 the hearing.

4     Because the City Defendants have not responded to their

5 claim of violation of the Fourth Amendment, Plaintiffs contend.

6 that they are entitled to summary judgment on their Fourth

7 Amendment claim.

8     If Plaintiffs establish facts at trial that the City

9 Defendants seized and immediately destroyed the personal property

10 of Plaintiffs, Plaintiffs will have established a violation of

11 the Fourth Amendment as a matter of law.

12              b.  Fourteenth Amendment Due Process Clause.

13     The Second Claim for Relief alleges that Defendants' alleged

14 policies, practices and conduct violate plaintiffs' right to due

15 process of law under the Fourteenth Amendment.

16     Plaintiffs' Fourteenth Amendment Due Process Clause claim is

17 grounded on procedural due process.

18     The Plaintiffs' personal possessions constitute property for

19 purposes of the Fourteenth Amendment. *See Fuentes v. Shevin,* 407

20 U.S. 67, 84 (1972).  "The central meaning of procedural due

21 process is that parties whose rights are to be affected are

22 entitled to be heard at a meaningful time and in a meaningful

23 manner."  *Orloff v. Cleland*, 708 F.2d 372, 379 (9th Cir.1983).

24 As explained in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-

25 434 (1982):

26              As our decisions have emphasized time and

again, the Due Process Clause grants the
aggrieved party the opportunity to present
his case and have its merits fairly judged.
Thus it has become a truism that 'some form
of hearing' is required before the owner is
finally deprived of a protected property
interest ... And that is why the Court has
stressed that, when a 'statutory scheme makes
liability an important factor in the State's
determination ..., the State may not,
consistent with due process, eliminate
consideration of that factor in its prior
hearing ... To put it as plainly as possible,
the State may not finally destroy a property
interest without first giving the putative
owner an opportunity to present his claim of
entitlement.

"We tolerate some exceptions to the general rule requiring

predeprivation notice and hearing, but only in '"extraordinary

situations where some valid governmental interest is at stake

that justifies postponing the hearing until after the event."'"

*United States v. James Daniel Good Real Property*, 510 U.S. 43, 53

(1993).  When a protected property interest is threatened, three

factors must be considered to determine whether the basic

requirements of procedural due process have been met:

"First, the private interest that will be
affected by the official action; second, the
risk of an erroneous deprivation of such
interest through the procedures used, and the
probable value, if any, of additional or
substitute procedural safeguards; and
finally, the Government's interest, including
the function involved and the fiscal and
administrative burdens that additional or
substitute procedural requirement would
entail."

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Plaintiffs argue that they are entitled to summary judgment

that the City Defendants violated their right to procedural due

10

process.  Plaintiffs do not discuss the adequacy of notice but, rather, focus solely on the immediate destruction of property following the seizures during the clean ups.  Plaintiffs contend that the record in this action establishes that this immediate destruction prevented Plaintiffs from any opportunity to present a claim of entitlement to the property destroyed.

The City Defendants do not address the factual or legal merits of Plaintiffs' Fourteenth Amendment procedural due process claim.  Rather, the City Defendants refer to the Fifth Amendment's takings clause, a claim not pled by Plaintiffs.  The City Defendants cite *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir.1996) in contending that "Plaintiff's [sic] more generalized takings claim premised on a violation of the Fourteenth Amendment's Due Process Clause is subsumed by his [sic] more particular takings claim premised on a violation of the Fifth Amendment's Just Compensation Clause."

The City Defendants make this argument because, under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), a takings claim against a public entity is not ripe if a property owner has an adequate remedy under state law for obtaining just compensation and the property owner has not availed himself of that process.  Until the property owner has been denied just compensation, no constitutional violation occurs.  In *Williamson,* a successor in interest to developers brought an action against the planning commission, alleging that the application of government

11

regulations involving a county zoning ordinance for the cluster development of residential areas affected a taking of property for which the Fifth Amendment required just compensation. The Supreme Court, assuming that the government regulation may affect a taking within the Fifth Amendment and that the Fifth Amendment required payment of money damages to compensate for the taking, any award of damages was premature where the developer had not yet obtained a final decision regarding the application of the ordinance and its regulations to its property and had not yet utilized state law procedures for obtaining just compensation.

"Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989).

The Fifth Amendment provides that "[n]o person shall be ... deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation."[2]

In *Armendariz,* owners of low-income housing properties brought a Section 1983 damages action against city officials,

---

[2]"The Due Process Clause of the Fifth Amendment ... appl[ies] only to actions of the federal government – not to those of state or local governments." *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir.2001), citing *Schwieker v. Wilson*, 450 U.S. 221, 227 (1981).

1   alleging that conducting sweeps and overenforcing a housing code

2   to relocate criminals violated substantive due process.  The

3   Ninth Circuit explained:

>   What plaintiffs allege is a scheme by
>   defendants to evict tenants, deprive the
>   plaintiffs of rental income that could have
>   been used to bring the buildings into
>   compliance, prevent owners from learning what
>   repairs were necessary to come into
>   compliance, and invent new violations after
>   plaintiffs had conducted repairs that would
>   bring their properties into compliance.  The
>   alleged purpose of this scheme was to deprive
>   the plaintiffs of their property, either by
>   forced sale, driving down the market value of
>   the properties so a shopping-center developer
>   could buy them at a lower price, or by
>   causing the plaintiffs to lose their
>   properties by foreclosure ... If the
>   plaintiffs can prove their allegations, the
>   defendants' actions would constitute a taking
>   of the property.

14  *Id.* at 1321.  The Ninth Circuit held that "since the Takings

15  Clause 'provides an explicit textual source of constitutional

16  protection' against 'private takings,' the Fifth Amendment (as

17  incorporated by the Fourteenth), 'not the more generalized notion

18  of "substantive due process," must be the guide' in reviewing the

19  plaintiffs' claim of a "private taking" ...' and that "[b]ecause

20  the conduct that the plaintiffs allege is the type of government

21  action that the Fourth and Fifth Amendments regulate, *Graham*

22  precludes their substantive due process claim."  *Armendariz*,

23  *supra*, 75 F.3d at 1324.[3]

24  _____

25  [3]*Armendariz* has been limited by the Ninth Circuit in *Action
    Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d
    1020 (9th Cir.2007), based on the Supreme Court's decision in *Lingle
26  v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005).  In *Lingle*, the

1     The City Defendants cite a number of cases for the

2 proposition that a Fourteenth Amendment procedural due process

3 claim is subsumed in a Fifth Amendment takings claim.

4     The City Defendants cite *Miller v. Campbell County*, 945 F.2d

5 348 (10ᵗʰ Cir.1991).

6     In *Miller*, homeowners brought a suit for damages suffered

7 when their village was declared uninhabitable by county

8 commissioners.  Plaintiffs brought both a Fifth Amendment takings

9 claim and procedural and substantive due process claims.  The

10 Tenth Circuit held:

11          Because the Just Compensation Clause of the
            Fifth Amendment imposes very specific
12          obligations upon the government when it seeks
            to take private property, we are reluctant in
13          the context of a factual situation that falls
            squarely within that clause to impose new and
14          potentially inconsistent obligations upon the
            parties under the substantive or procedural
15          components of the Due Process Clause.  It is
            appropriate in this case to subsume the more
16          generalized Fourteenth Amendment due process
            protections within the more particularized
17          protections of the Just Compensation Clause.

18 945 F.2d at 348.

19 ───────────────────────

20 Supreme Court held an arbitrary and irrational deprivation of real
   property, although it would no longer constitute a taking, might be
21 "so arbitrary or irrational that it runs afoul of the [substantive]
   Due Process Clause."  544 U.S. at 542.  The Ninth Circuit held:
22 "Given that holding, it must be true that the *Armendariz* line of
   cases can no longer be understood to create a 'blanket prohibition'
   of all property-related substantive due process claims.'  *Squaw*
23 *Valley*, 375 F.3d at 949.  After *Lingle*, 'the Fifth Amendment does
   not invariably preempt a claim that land use action lacks any
24 substantial relation to the public health, safety, or general
   welfare.'  *Crown Point,* at 856, regardless of anything *Squaw Valley*
25 said to the contrary ... We see no difficulty in recognizing the
   alleged deprivation of rights in real property as a proper subject
26 of substantive due process analysis."  509 F.3d at 1025-1026.

In *Rocky Mountain Materials & Asphalt, Inc. v. Bd. of County Comm'rs of El Passo County*, 972 F.2d 309 (10th Cir.1992), also cited by the City Defendants, a mining company brought a civil rights action against a county and its board of commissions, claiming that its property had been taken without just compensation in violation of the Fifth Amendment and in violation of procedural due process under the Fourteenth Amendment.  The Tenth Circuit held:

> When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim ... [U]ntil a plaintiff has resorted to the condemnation procedures to recover compensation for the alleged taking, the procedural due process claim is likewise not ripe because it is in essence based on the same deprivation.

972 F.2d at 311.

The City Defendants cite *Bateman v. City of West Bountiful*, 89 F.3d 704 (10th Cir.1996).  In *Bateman,* a property owner brought a civil rights action against the city alleging that a city official's filing of a certificate of noncompliance after an alleged waiver of zoning requirements violated the Fifth Amendment's takings clause, due process and equal protection. "The Tenth Circuit repeatedly has held that the ripeness requirement of *Williamson* applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim."  *Id.* at 709.

15

1    The City Defendants cite *Taylor Inv., Ltd. v. Upper Darby*

2 *Tp.*, 983 F.2d 1285 (3rd Cir.1993)(owners brought civil rights

3 action against township arising from zoning hearing officer's

4 revocation of tenant's use permit, alleging violations of

5 substantive due process, procedural due process, and equal

6 protection.  The Third Circuit held:

7          Defendants contend that the finality rule
           applies regardless of the theory on which
8          plaintiffs attack a land-use decision - even
           where the attack is premised on substantive
9          due process, procedural due process, and
           equal protection.  We believe the finality
10         rule applies to each of plaintiffs' claims.

11  983 F.2d at 1292.  *Accord Bigelow v. Michigan Department of*

12  *Natural Resources*, 970 F.2d 154, 159-160 (6th Cir.1992), where

13  commercial fishermen brought an action against the state,

14  alleging, *inter alia*, a taking without just compensation and

15  denial of equal protection and procedural due process arising

16  from the state's support of a plan, approved by the federal

17  court, in which Indians were given exclusive rights to fish in

18  certain state waters; *John Corporation v. City of Houston*, 214

19  F.3d 573, 585-586 (5th Cir.2000), where owners of demolished

20  buildings brought an action against the city, alleging that the

21  city demolished the property without a public purpose and without

22  just compensation in violation of the Fifth Amendment, as well as

23  their rights under the Eighth and Fourteenth Amendments.

24    Relying on these cases, the City Defendants contend:

25          When a plaintiff alleges that it was denied a
           property interest without due process, and
26          the loss of that property interest is the

16

same loss upon which the plaintiff's [sic]
takings claim is based, it [sic] must utilize
the remedies applicable to the takings claim
in order to satisfy the ripeness requirement.
In this case, because Plaintiffs' procedural
due process claim is premised on the same
allegations as their unlawful taking, it too
is premature.  The unripe takings claim
renders the ancillary due process claim
unripe as well.  Thus, until Plaintiffs have
pursued their remedies in state court, a
federal court cannot make a complete
determination as to the allegations of
procedural due process.

Plaintiffs reply that they have not alleged a Fifth Amendment takings claim in the SAC.  They further note that the cases upon which the City Defendants rely all involve zoning or similar regulatory situations.  Plaintiffs note that in *Williamson County*, a successor in interest to developers brought an action against the planning commission alleging the taking of property.

Plaintiffs argue that these cases have no application to this action in which Plaintiffs claim that the total and immediate destruction of their personal possessions violated procedural due process under the Fourteenth Amendment. Plaintiffs cite *San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino,* 825 F.3d 1404 (9th Cir.1987).  There, an incorporated physicians' group, whose contract to supply medical services to the county was terminated, brought an action against the county, alleging deprivation of property interest without due process of law.  In *dicta*, the Ninth Circuit noted:

17

> Appellees argue that even if Physicians'
> Group has a protectible interest under state
> and federal law, no harm is done until
> plaintiffs exhaust their state court
> remedies. *Cf. Williamson County Regional
> Planning v. Hamilton Bank*, 473 U.S. 172, 194-
> 95 ... (1985). *Williamson,* however, dealt
> with a situation where there could be no
> requirement of predeprivation due process.
> *See also Hudson v. Palmer*, 468 U.S. 517, 532-
> 33 ... (1984); *Parratt v. Taylor*, 451 U.S.
> 527, 541 ... (1981). Here, Physicians' Group
> alleges planned, non-random behavior on the
> part of the state. In such circumstances, a
> section 1983 case for violation of due
> process may lie without regard to, or use of,
> the state's postdeprivation remedies. *Logan*
> [*v. Zimmerman Brush Co.]*, 455 U.S. at 435-37
> ... The district court ruled correctly on
> this issue.

825 F.2d at 1410 n.6.

In *Pottinger v. City of Miami*, 810 F.Supp. 1551

(S.D.Fla.1992), the District Court granted declaratory and

injunctive relief in a bifurcated trial in which homeless

plaintiffs alleged that the seizure and destruction of their

personal property violated their constitutional rights. The

*Pottinger* Court found that the City of Miami's seizure and

destruction of the plaintiffs' personal property violated the

Fifth Amendment Takings Clause. *Id.* at 1570 n.30. The District

Court stated:

> The City argues that plaintiffs' fifth
> amendment claim must fail because they have
> not shown that their property was taken for a
> 'public use.' However, the United States
> Supreme Court has defined 'public use'
> broadly. *See Hawaii Housing Auth. v.
> Midkiff*, 467 U.S. 229, 240 ... (1984). In
> *Midkiff*, the Court stated that '[t]he 'public
> use' requirement is ... coterminous with the
> scope of a sovereign's police powers,' *id.*,

18

and that the proper test is whether the 'exercise of the eminent domain power is rationally related to a conceivable public purpose,' *id.* at 241 ... In rejecting the argument that the government must use or possess the condemned property, the Court stated that 'it is only the taking's purpose, and not its mechanics, that must pass scrutiny under the Public Use Clause.' *Id.* at 244 ... Similarly, under the *Midkiff* analysis, the fact that the City does not actually use or possess the property taken from the homeless does not mean that there is no 'public use,' and therefore no taking under the fifth amendment.

Although the evidence does substantiate plaintiffs' claim that there have been 'takings' of class members' property, the more difficult question in this case is how plaintiffs may be 'justly compensated.'  The Supreme Court has defined 'just compensation' as placing the property owner in the same position monetarily as he would have been if his property had not been taken. *United States v. Reynolds*, 397 U.S. 14, 16 ... (1970).  The court is unable to address this issue based on the evidence presented. Consequently, the issue of 'just compensation' will have to be the subject of a separate evidentiary hearing.

*Id.*

In *Wong v. City and County of Honolulu*, 333 F.Supp.2d 942 (D.Hawaii 2004), the District Court addressed qualified immunity from liability under Section 1983 based on the seizure and destruction of derelict vehicles pursuant to statutes that did not provide for notice and an opportunity to be heard prior to the destruction, thereby violating Plaintiff's rights under the Fourth Amendment, the Fourteenth Amendment Due Process Clause, and the Fifth Amendment's Takings Clause.  With regard to the Fifth Amendment takings claim, the District Court held:

19

Plaintiff alleges that the removal and destruction of the motorcycles from the area around his shop represented an unlawful taking without just compensation, in violation of the Fifth Amendment.  However, 'it was recognized [long ago] that "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community," and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.'  *Keystone Bituminous Coal Assn' v. DeBenedictis*, 480 U.S. 470, 491-92 ... (1987) ...; *see also Miller v. Schoene*, 276 U.S. 272, 279-80 ... (1928)(noting that 'where the public interest is involved[,] preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property').

Although removal and immediate disposition under H.R.S. §§ 290-8 and 290-9 would be in substantial advancement of legitimate state interests, and cannot be considered a violation of the Takings Clause, *see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1022-24 ... (1992), genuine issues of material fact exist as to whether the motorcycles were properly designated as derelict under H.R.S. § 290-8, and whether Defendant Penarosa acted arbitrarily and capriciously by removing and destroying the motorcycles on May 1, 2001 after providing a disputed deadline of May 7 ... The Court is accordingly precluded from granting qualified immunity as to Plaintiff's Fifth Amendment Claim against Defendant Penarosa.

*Id.* at 955.

Neither *Pottinger* or *Wong* constitute persuasive authority that Plaintiffs are required by *Graham v. Connor* and *Armendariz* to plead and prove a Fifth Amendment Takings Claim in lieu of a Fourteenth Amendment procedural due process claim.  *Williamson*

20

assumed that a taking had occurred and that just compensation was required. *Armendariz* did not involve a claim for violation of procedural due process but, rather, substantive due process, and did not involve facts similar to those before the Court. Other than the statements in *Pottinger* and *Wong*, no authority is cited or has been located holding that a plaintiff alleging that his or her personal property has been seized and destroyed by police action sweeps or clean ups is limited to a Fifth Amendments Takings Claim.

The City Defendants' contention that Plaintiffs' motion for summary judgment must be denied on the ground that they have not complied with the requirements of the Fifth Amendments Takings Clause is without merit.

Plaintiffs' motion for summary judgment on their of violation of the Fourteenth Amendment procedural due process claim is DENIED because issues of fact exist as to the fact and adequacy of notice and the amount of any damages.

> c. Equal Protection.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity

that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons ... We have attempted to reconcile the principle with reality by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiffs assert that there is no dispute that the Clean-up policy and practice at issue applied only to homeless persons. Plaintiffs cite *City of Cleburne*, *supra*: "[M]ere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases for treating a home for the mentally retarded differently from apartment houses, multiple dwellings, and the like."  473 U.S. at 448.  Plaintiffs assert that "[t]argeting homeless people without any permissible justification strongly indicates that 'the decisionmaker ... selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group'", citing *Wayte v. United States*, 470 U.S. 598, 610 (1985).  Plaintiffs contend that the City's policy "requires summary destruction of homeless people's belongings, not because they are trash, or because it is necessary to keep the City clean, but because the City wanted the homeless to 'move along.'"

The City Defendants do not respond to the merits of Plaintiffs' equal protection claim.  If Plaintiffs establish

1  facts at trial that homeless persons' personal property was

2  immediately destroyed after seizure while the personal property

3  of others who are not within the class was not, Plaintiffs will

4  have established a violation of equal protection under the

5  Fourteenth Amendment.

6         d.  <u>Policy or Practice</u>.

7      A municipality cannot "be held liable under § 1983 on a

8  respondeat superior theory." *Monell v. Dep't of Soc. Serv. of New*

9  *York*, 436 U.S. 658, 691 (1978).  Liability may attach to a

10 municipality only where the municipality itself causes the

11 constitutional violation through "execution of a government's

12 policy or custom, whether made by its lawmakers or by those whose

13 edicts or acts may fairly be said to represent official policy.

14 *Id.* at 694; *see also Pembaur v. City of Cincinnati,* 475 U.S. 469,

15 479-480 (1986)("The 'official policy' requirement was intended to

16 distinguish acts of the municipality from acts of employees of

17 the municipality, and thereby make it clear that municipal

18 liability is limited to action for which the municipality is

19 actually responsible.").  As explained in *Menotti v. City of*

20 *Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005):

21         There are three ways to show a policy or
            custom of a municipality: (1) by showing 'a
22         longstanding practice of custom which
            constitutes the "standard operating
23         procedure" of the local government entity;'
            (2) 'by showing that the decision-making
24         official was, as a matter of state law, a
            final policymaking authority whose edicts or
25         acts may fairly be said to represent official
            policy in the area of decision;' or (3) 'by
26         showing that an official with final

                                  23

1                     policymaking authority either delegated that

2                     authority to, or ratified the decision of, a
                    subordinate.'

3      In moving for summary judgment, Plaintiffs refer to the

4 December 8, 2007 Memorandum Decision granting preliminary

5 injunction, pages 13-14, setting forth the City's policy.

6 Plaintiffs contend that the facts set forth in the December 8,

7 2007 Memorandum Decision "have all now been confirmed" and that

8 "the City does not - indeed cannot - dispute them."

9      The City does not respond directly to this ground for

10 summary judgment.  However, in the City Defendants' opposition,

11 it is argued that Plaintiffs confuse episodes of the City's

12 authorized clean ups of areas involving the construction of

13 temporary shelters with "isolated and unauthorized episodes of

14 alleged misconduct" and that "[s]uch a distinction is of critical

15 importance."  The City refers to evidence that it conducts litter

16 removal on a daily basis, including accumulations of garbage in

17 the area of temporary shelters; that the City's authorized clean

18 up efforts are conditioned upon receipt of a citizen's complaint

19 ro matters affecting the public's health and safety; and evidence

20 that the City's authorized clean up efforts were preceded by

21 written and oral notice of the impending clean up, as well as

22 oral notice immediately preceding the clean up.  The City

23 contends that, during discovery, the City confirmed the dates and

24 locations of authorized clean ups since early 2004, which total

25 14 dates.  The City argues that these 14 dates are the entirety

26 of clean up efforts that involved the collaborative efforts of

the FPD and the CSD.  The City contends: "Any episode involving the alleged harassment of the City's homeless, or the corresponding destruction of personal property, which fall outside these dates was not conduct undertaken pursuant to any City policy at issue in this case."

From this argument, the absence of any direct response to Plaintiffs' ground for summary judgment under *Monell*, and the City Defendants' concession at the hearing, the City concede that the clean ups conducted on these 14 dates were conducted pursuant to recognized City policy and practice.  However, whether the seizures and destruction of personal property on dates other than these 14 dates were pursuant to the City's official policy and practice present questions of fact for the jury to decide.  The same is true with regard to the liability of the individual City Defendants.

     2.  <u>State Law Claims</u>.

          a.  <u>California Civil Code § 2080; California Government Code § 815.6</u>.

Plaintiffs move for summary judgment on the Seventh Claim for Relief.

California Civil Code § 2080 provides in pertinent part:

> Any person who finds a thing lost is not bound to take charge of it, unless the person is otherwise required to do so by contract or law, but when the person does take charge of it he or she is thenceforward a depository for the owner, with the rights and obligations of a depository for hire.  Any person or any public or private entity that finds and takes possession of any money,

25

goods, things in action, or other personal
property ... shall, within a reasonable time,
inform the owner, if known, and make
restitution without compensation, except a
reasonable charge for saving and taking care
of the property.

California Civil Code § 2080.1 provides:

(a) If the owner is unknown or has not
claimed the property, the person saving or
finding the property shall, if the property
is of the value of one hundred dollars ($100)
or more, within a reasonable time turn the
property over to the police department of the
city ... and shall make an affidavit, stating
when and where he or she found or saved the
property, particularly describing it ....

(b) The police department ... shall notify
the owner, if his or her identity is
reasonably ascertainable, that it possesses
the property and where it may be claimed.
The police department ... may require payment
by the owner of a reasonable charge to defray
costs of storage and care of the property.

California Civil Code § 2080.2 provides that "[i]f the owner

appears within 90 days, after receipt of the property by the

police department ..., proves his ownership of the property, and

pays all reasonable charges, the police department ... shall

restore the property to him."

Plaintiffs contend that, until the preliminary injunction

was issued, the City Defendants made no effort to comply with

these provisions.   Plaintiffs cite California Government Code §

815.6:

Where a public entity is under a mandatory
duty imposed by enactment that is designed to
protect against the risk of a particular kind
of injury, the public entity is liable for an
injury of that kind proximately caused by its
failure to discharge the duty unless the

26

<blockquote>
public entity establishes that it exercised
reasonable diligence to discharge the duty.
</blockquote>

Plaintiff assert that, because the City failed to discharge its statutory duties, the City is liable for the damage caused by the failure to store Plaintiffs' property after the clean ups.

The City opposes summary judgment on this claim, contending that Plaintiffs have not established that there is (1) a private right of action for violation of Section 2080; (2) that the individual Defendants took possession of Plaintiffs' property; or (3) that the individual Defendants knew the identities of the owners of the lost property.

A private right of action against the City of Fresno for violation of Section 2080 exists via California Government Code § 815.6.  In *Haggis v. City of Los Angeles*, 22 Cal.4th 490, 499-500 (2000), the California Supreme Court held:

<blockquote>
We cannot agree with the City and amici curiae that liability under section 815.6 requires that the enactment establishing a mandatory duty *itself* manifest an intent to create a private right of action, for their position is directly contrary to the language and function of section 815.6.  When an enactment establishes a mandatory governmental duty and is designed to protect against the particular kind of injury the plaintiff suffered, section 815.6 provides that the public entity 'is liable' for an injury proximately caused by its negligent failure to discharge the duty.  *It is section 815.6, not the predicate enactment, that creates the private right of action.*  If the predicate enactment is of a type that supplies the elements of liability under section 815.6 - if it places the public entity under an obligatory duty to act or refrain from acting, with the purpose of preventing the specific type of injury that
</blockquote>

27

1
2
3

> occurred - then liability lies against the
> agency under section 815.6, regardless of
> whether private recovery liability would have
> been permitted, in the absence of section
> 815.6, under the predicate enactment alone.

There remains an issue of the applicability of Section 2080 to Plaintiffs' claims in this action.  It is questionable that Plaintiffs' personal property that was seized and destroyed could have been considered lost or saved by someone.  The scope of this statute is also of concern because of the possibility of imposing liability under these statutes could make the City legally responsible to keep every item left on the ground in Fresno, because of the possibility that it might be property of a homeless person who might want it back.

With these provisos and based on the facts established at trial, Plaintiffs are entitled to summary adjudication that Section 2080 imposes a private right of action against the City of Fresno for damages.  Proof of what property was lost and its value remains in dispute.

b.  <u>Bane Act, California Civil Code § 52.1.</u>

California Civil Code § 52.1(b) provides:

> Any individual whose exercise or enjoyment of
> rights secured by the Constitution or laws of
> the United States, or of rights secured by
> the Constitution or laws of this state, has
> been interfered with, or attempted to be
> interfered with [by threats, intimidation, or
> coercion, or attempts to interfere by
> threats, intimidation, or coercion], may
> institute and prosecute in his or her own
> name and on his or her own behalf a civil
> action for damages, including, but not
> limited to, damages under section 52,
> injunctive relief, and other appropriate

28

> equitable relief to protect the peaceable
> exercise or enjoyment of the right or rights
> secured.

In *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998), the California Supreme Court explained that "section 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *See also Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004)("the language of section 52.1 provides remedies for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion, and whether or not state action is involved."). In *Venegas*, the California Supreme Court explained:

> In *Jones v. Kmart Corp.* ..., we acknowledged
> that Civil Code section 52.1 was adopted 'to
> stem a tide of hate crimes.' But contrary to
> the County's position, our statement did not
> suggest that section 52.1 was limited to such
> crimes, or required plaintiffs to demonstrate
> that County or its officers had a
> discriminatory purpose in harassing them,
> that is, that they committed an actual hate
> crime. We continued in *Jones* by simply
> observing that the language of section 52.1
> provides remedies for 'certain misconduct
> that interferes with' federal or state laws,
> if accompanied by threats, intimidation, or
> coercion, and whether or not state action is
> involved.

*Id.* at 843. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not

required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007).

Plaintiffs concede that the California Supreme Court has not defined the terms "threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion." Plaintiffs refer to a decision by the Massachusetts Supreme Judicial Court, construing language in a statute that formed the model for the Bane Act:

> [A] 'threat' consists of the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. 'Coercion' is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

*Haufler v. Zotos*, 845 N.E.2d 322, 335-336 (Mass.2006).

Plaintiffs refer to the evidence that FPD officers were present in uniform with weapons during the clean ups and to the law that citizens have a duty to obey police officers, *see Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 206 (1991). Plaintiffs contend that the authority granted to government officials means that their actions are inherently coercive. *See Cole v. Doe I thru 2 Officers of City of Emeryville*, 387 F.Supp.2d 1084, 1103-1104 (N.D.Cal.2005) and cases cited therein (*Cole* allowed a Section 52.1 claim based on Cole's claim that he was coerced into consenting to a search of his vehicle when the officers made an unjustified traffic stop of his vehicle and threatened to keep

30

him handcuffed).

Plaintiffs refer to evidence that the police presence at the clean ups was intended to convince the homeless that they meant business and to get the homeless to do what the City wanted them to do, and to evidence threatening persons with going to jail. Plaintiffs argue that "[i]t was the Defendants' actions that forced them to do 'something [they] would not otherwise have done,' *i.e.,* to lose their property with no chance to recover it. Plaintiffs contend:

> For purposes of the Bane Act, it does not matter whether it was the presence of a FPD and CSD workers and equipment, the implicit threat of arrest if anyone objected, or the economic coercion inherent in having all of their belongings destroyed that prompted Plaintiffs to give up their rights to preserve or to reclaim their property. Any of these alternatives constitutes a Bane Act violation.

The City Defendants argue that Plaintiffs are not entitled to summary judgment.

The City Defendants cite *Cabesuela v. Browning-Ferris Industries of California, Inc.,* 68 Cal.App.4th, 101, 110-111 (1998). *Cabesuela* relied on *Boccato v. City of Hermosa Beach*, 29 Cal.App.4th 1797, 1809 (1994), in ruling that Civil Code § 52.1 must be read in conjunction with Civil Code § 52.7 and that, in order to state a claim under Section 52.1, "there must be violence or intimidation by threat of violence [and] the violence or threatened violence must be due to plaintiff's membership in one of the specified classifications set forth in Civil Code §

31

1    51.7 or a group similarly protected by constitution or statute

2    from hate crimes."  *Id.* at 111.

3        However, because the California Supreme Court in *Venegas*,

4    *supra*, 32 Cal.4th at 842, expressly rejected *Boccato*, *Cabesuela*

5    no longer correctly interprets Section 52.1's requirements.  *See*

6    *Moreno v. Town of Los Gatos*, 2008 WL 467777 (9th Cir.2008).

7        The City Defendants refer to evidence that each location at

8    which a clean up was conducted involved the construction of

9    temporary shelters on property owned by someone other that

10   Plaintiffs; that each clean up was triggered by a citizen

11   complaint regarding the temporary shelters; that affected

12   individuals were given advance notice of the need to relocate

13   themselves and their personal possessions; that, on the day of

14   the clean up, individuals who remained on the site were advised

15   to relocate off the property; that, when individuals requested

16   time to remove their belongings, the request was granted even if

17   it meant delaying the clean up; that Officer Wallace did not wear

18   a police uniform to the clean ups; that no arrests were made; and

19   that Plaintiffs were not threatened, coerced or intentionally

20   intimidated at any of the clean ups.  The City Defendants argue:

21            The gravamen of Plaintiffs' action is their
              assertion that the constitutional rights
22            interfered with by Defendants was the right
              to be free from the unlawful seizure of
23            personal property.  In opposition to
              Plaintiffs' motion, Defendants have raised
24            substantial disputed issues of material fact
              regarding whether Defendants threatened or
25            committed violent acts which interfered with
              Plaintiffs' right to possess property.
26            Specifically, Defendants have presented

                                32

evidence that the conduct of the clean up
efforts did not involve seizing property from
individuals.  Moreover, Defendants have
submitted competent evidence that they never
refused an individual's request at a clean up
effort for an opportunity to remove or
relocate their personal property.  In fact,
the evidence establishes that the only
materials collected and discarded were
unattended materials left at a clean up site.
There is no evidence that any individual's
purported absence from the clean up site
(resulting in the alleged loss of personal
property) was the result of any threatening
or violent act by Defendants.

Plaintiffs' motion for summary judgment on this claim for

relief is DENIED.  Issues of fact exist which preclude summary

judgment concerning the use of force or intimidation by each of

the individual City Defendants during the sweeps or clean ups.

In addition, to the extent that Plaintiffs' claim is based on the

removal and destruction of personal property unattended by its

owner, there is a question that the Bane Act applies by its

terms, *i.e.,* if the owner of the personal property was not

present during the seizure and destruction of the property, could

that owner have been coerced or intimidated from doing something

he or she was entitled to do?

### c.  Conversion.

Plaintiffs move for summary judgment on their claim for

conversion.

As explained in *Burlesci v. Petersen*, 68 Cal.App.4th 1062,

1066 (1998):

Conversion is the wrongful exercise of
dominion over the property of another.  The
elements of a conversion claim are: (1) the

33

plaintiff's ownership or right to possession
of the property; (2) the defendant's
conversion by a wrongful act or disposition
of property rights; and (3) damages.
Conversion is a strict liability tort.  The
foundation for the action rests neither in
the knowledge nor the intent of the
defendant.  Instead, the tort consists in the
breach of an absolute duty; the act of
conversion itself is tortious.  Therefore,
questions of the defendant's good faith, lack
of knowledge, and motive are ordinarily
immaterial.

The City Defendants oppose summary judgment on this claim.

First, they argue that there is no evidence to support that

Defendants Dyer, Garner, Rogers or Weathers ever touched a single

piece of property owned or possessed by the Plaintiffs.

Plaintiffs reply that this is immaterial to liability.

Plaintiffs cite *Gruber v. Pacific States Savings & Loan Co.*, 13

Cal.2d 144, 148 (1939):

Nor do we think that a manual taking or
destruction is essential to a conversion.  In
2 Tiffany, Landlord and Tenant, page 1673,
the following appears: 'The landlord is, it
has been held, guilty of conversion if he
refuses to allow the tenant to remove his
goods during the tenancy, or at a subsequent
time when the latter has a legal right to do
so ....'

Plaintiffs also cite *Tide Water Associated Oil Co. v. Superior

Court,* 43 Cal.2d 815, 827 (1955)("It is settled that where there

is a common plan or design to commit a tort, all who participate

are jointly liable whether or not they do the wrongful acts.").

The City Defendants further oppose summary judgment on

Plaintiffs' conversion claim on the ground that there is no

evidence that Plaintiffs Randy Johnson, Sandra Thompson, Alfonzo

34

1    Williams or Jeannine Nelson filed tort claims with the City.

2         This contention is without merit.  A consolidated claim was

3    submitted on behalf of these named plaintiffs on December 12,

4    2006.  *See* PUDF 218.

5         The City Defendants oppose summary judgment on Plaintiffs'

6    conversion claim on the ground that Plaintiffs' various tort

7    claims fail to identify either Defendants Wallace or Rogers as

8    City employees responsible for any injury or loss purportedly

9    sustained.

10        California Government Code § 945.4 provides in pertinent

11   part:

12              [N]o suit for money or damages may be brought
                against a public entity on a cause of action
13              for which a claim is required to be presented
                in accordance with Chapter 1 (commencing with
14              Section 900) and Chapter 2 (commencing with
                Section 910) of Part 3 of this division until
15              a written claim therefor has been presented
                to the public entity and has been acted upon
16              by the board, or has been deemed to have been
                rejected by the board, in accordance with
17              Chapters 1 and 2 of Part 3 of this division.

18   Section 950.2 provides in pertinent part:

19              [A] cause of action against a public employee
                or former public employee for injury
20              resulting from an act or omission in the
                scope of his employment as a public employee
21              is barred under Part I (commencing with
                Section 900) of this division or under
22              Chapter 2 (commencing with Section 945) of
                Part 4 of this division.  This section is
23              applicable even though the public entity is
                immune from liability for the injury.
24
     Section 910 sets forth the contents of a claim and provides in
25
     pertinent part:
26

                                    35

> A claim shall be presented by claimant or a person acting on his or her behalf and shall show all of the following:
>
> (a) The name and post office address of the claimant.
>
> (b) The post office address to which the person presenting the claim desires notices to be sent.
>
> (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
>
> (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.
>
> (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.
>
> (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.  If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.

Section 915(a) provides that a claim against a local public entity shall be presented to the local public entity by delivering it or mailing it "to the clerk, secretary or auditor thereof".

The failure to comply with state imposed procedural conditions to sue bars the maintenance of a cause of action based upon those pendant State claims.  *State v. Superior Court*

36

1   *(Bodde)*, 32 Cal.4th 1234, 1243 (2004)("[A] plaintiff must allege

2   facts demonstrating or excusing compliance with the claim

3   presentation requirement.  Otherwise, his complaint is subject to

4   a general demurrer for failure to state facts sufficient to

5   constitute a cause of action.").  In *City of San Jose v. Superior*

6   *Court*, 12 Cal.3d 447, 455 (1974), the California Supreme Court

7   explained:

8            It is not the purpose of the claims statutes
             to prevent surprise.  Rather, the purpose of
9            these statutes is to provide the public
             entity sufficient information to enable it to
10           adequately investigate claims and settle
             them, if appropriate, without the expense of
11           litigation ... It is well-settled that claims
             statutes must be satisfied even in the face
12           of the public entity's actual knowledge of
             the circumstances surrounding the claim.
13           Such knowledge - standing alone - constitutes
             neither substantial compliance nor basis for
14           estoppel. ...

15  The Supreme Court further held that in determining a contention

16  that there has been substantial compliance with the claim filing

17  requirements of the California Government Tort Claims Act, "two

18  tests shall be applied: Is there some compliance with all of the

19  statutory requirements; and, if so, is this compliance sufficient

20  to constitute substantial compliance."  *Id*. at 456-457.  *Loehr v.*

21  *Ventura County Community College Dist.*, 147 Cal.App.3d 1071. 1083

22  (1983), holds:

23           Under [the test of substantial compliance],
             the court must ask whether sufficient
24           information is disclosed on the face of the
             filed claim 'to reasonably enable the public
25           entity to make an adequate investigation of
             the merits of the claim and to settle it
26           without the expense of a lawsuit.'

37

1    As Plaintiffs contend, the tort claims filed in connection
2    with this action "which listed the individual defendants, at
3    least as witnesses, gave more than enough information to allow
4    the City to investigate, and therefore satisfied any
5    requirement."

6        The claim filing requirement is satisfied.

7        However, as the City Defendants contend, summary judgment as
8    to the individual defendants is not appropriate because issues of
9    fact exist regarding their statutory immunities.

10        3.   <u>Injunctive Relief and Declaratory Relief</u>.

11        Plaintiffs' motion for summary judgment granting permanent
12   injunctive and declaratory relief is DENIED.  Whether those
13   remedies are available and necessary cannot be determined until
14   after trial.

15                           <u>CONCLUSION</u>

16        For the reasons stated above:

17        A.  Plaintiffs' motion for summary judgment as to liability
18   against the City Defendants is GRANTED IN PART AND DENIED IN
19   PART:

20        1.  Plaintiffs' motion is GRANTED as to Defendant the
21   City of Fresno to the extent that the clean-ups conducted on the
22   14 dates set forth at pages 6-7 of this Memorandum Decision were
23   conducted pursuant to the unlawful  policy of the City of Fresno;

24        2.  Plaintiffs' motion is GRANTED as to Defendant the
25   City of Fresno  to the extent that, if Plaintiffs' establish at
26   trial that the City Defendants seized and immediately destroyed

1   the personal property of Plaintiffs, Plaintiffs will have

2   established a violation of the Fourth Amendment as a matter of

3   law;

4          3.   Plaintiffs' motion is GRANTED as to Defendant the

5   City of Fresno to the extent that, if Plaintiffs establish at

6   trial that homeless persons' personal property was immediately

7   destroyed after seizure while the personal property of others who

8   are not within the class was not, Plaintiffs will have

9   established a violation of equal protection under the Fourteenth

10  Amendment;

11         4.   Plaintiffs' motion is GRANTED as to Defendant the

12  City of Fresno to the extent that California Civil Code § 2080.2

13  imposes a private right of action against Defendant City of

14  Fresno;

15         5.   In all other respects, Plaintiffs' motion is

16  DENIED.

17     B.   Counsel for Plaintiffs shall prepare and lodge a form of

18  order that the rulings set forth in this Memorandum Decision

19  within five (5) days following the date of service of this

20  decision.

21  IT IS SO ORDERED.

22  Dated:   May 12, 2008          _____/s/ Oliver W. Wanger_____
                                    UNITED STATES DISTRICT JUDGE
23

24

25

26

                                    39